ACCEPTED
01-15-00147-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/26/2015 11:35:19 PM
CHRISTOPHER PRINE
CLERK

**ORAL ARGUMENT REQUESTED**

No. 01-15-00147-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/26/2015 11:35:19 PM
CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS AT HOUSTON

*Metropolitan Life Insurance Company and Metropolitan Insurance & Annuity Company*,

Appellants,

*Peachtree Settlement Funding, LLC and Sara Swain,*

Appellees.

Appeal from Cause No. 201474548
In the 234th Judicial District Court, Harris County, Texas

## BRIEF OF APPELLEE PEACHTREE SETTLEMENT FUNDING, LLC

NESBITT, VASSAR & McCOWN, L.L.P.

Earl S. Nesbitt
State Bar No. 14916900
enesbitt@nvmlaw.com
David S. Vassar
State Bar No. 20503175
dvassar@nvmlaw.com
Patrick P. Sicotte
State Bar. No. 24079330
psicotte@nvmlaw.com
15851 Dallas Parkway, Suite 800
Addison, Texas 75001
Telephone: (972) 371-2411
Telecopier: (972) 371-2410

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to TEX. R. APP. P. 38.1(a), the following is a complete list of all parties to the trial court's judgment or order appealed from, and the names and addresses of all trial and appellate counsel:

**APPELLANTS:  Metropolitan Life Insurance Company and Metropolitan Insurance & Annuity Company**

Represented by:

Stephen R. Harris
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
T: (215) 988-2700
F: (215) 988-2757

Patrick B. Larkin
State Bar No. 24013004
Larkin Law Firm
11200 Broadway Street, Suite 2705
Pearland, Texas 77584
T: (281) 412-7502
F: (281) 412-7502

**APPELLEES:**

**Peachtree Settlement Funding, LLC**

Represented by:

Laryssa Korduba
State Bar No. 24043763
The Korduba Law Firm
211 Florence Street
Tomball, Texas 77375
*Trial Court Counsel*

Earl S. Nesbitt
State Bar No. 14916900
David S. Vassar
State Bar No. 20503175
Patrick P. Sicotte
State Bar No. 24079330
Nesbitt, Vassar & McCown, L.L.P.
15851 Dallas Parkway, Suite 800
Addison, Texas 75001
T: (972) 371-2411
F: (972) 371-2410
*Trial Court and Appellate Counsel*

**Sara Swain,** *Pro Se*

3303 Quarry Place Lane
Katy, Texas 77493-1847

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL .......................................................... ii

TABLE OF CONTENTS .................................................................................... iv

TABLE OF AUTHORITIES ............................................................................... vi

REQUEST FOR ORAL ARGUMENT ................................................................ xi

STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................ 1

SUMMARY OF THE ARGUMENT ....................................................................7

ARGUMENT AND AUTHORITIES ..................................................................8

    A.  The right to receive structured settlement payments is a property right; such rights are freely assignable and alienable; and restraints against alienability are disfavored and strictly construed under Texas law. .................................8

    B.  By approving the Swain-Peachtree Transfer and rendering the Final Order, employing a Servicing Agreement to facilitate Swain's desire to transfer partial payments, the trial court did not improperly "rewrite" the underlying contracts between Swain and MetLife. ......................................................18

    C.  The Rains Case is different. ..................................................................24

    D.  The Servicing Arrangement approved in the Final Order was appropriate and consistent with Texas principal-agency law and did not adversely or materially impact MetLife. ..........................................................................29

    E.  The Final Order (including the Servicing Arrangement) does not contravene the Texas Transfer Statute, either directly or indirectly. ..............................39

    F.  The Servicing Arrangement did not impose upon MetLife a contractual or business relationship with Peachtree. ...........................................................41

    G.  The Final Order and Servicing Arrangement did not create new or material burdens or risks for MetLife. The alleged bankruptcy risk is remote and immaterial. ............................................................................................45

    H.  Swain is Not Hindered by the Servicing Arrangement in Transferring Additional Payments. ...........................................................................48

    I.  The Final Order and Servicing Arrangement do not contravene the Wisconsin Order. .................................................................................53

    J.  The trial court did not abuse its discretion in approving the Swain-Peachtree

Transfer..................................................................................................55

PRAYER ................................................................................................60

CERTIFICATE OF COMPLIANCE...................................................60

CERTIFICATE OF SERVICE .............................................................61

# TABLE OF AUTHORITIES

**Federal Cases**

*Centex Constr. Co. v. Kennedy,* 332 F. Supp. 1213 (S.D. Tex 1971) ......................9

*In re: Martin,* 117 B.R. 243 (Bankr N.D. Tex. 1990) ..................................... 10, 12

*Settlement Capital Corporation, Inc. v. Pagan,* 649 F. Supp. 2d 545 (N.D. Tex. 2009) ...............................................................................................11

**State Cases**

*Ames v. Great Southern Bank,* 672 S.W.2d 447 (Tex. 1984) ..................................34

*Astie v. Aubrey, Inc.,* 1999 Tex. App. Lexis 3838 (Tex. App.—Amarillo 1999, no pet.) ..............................................................................................................45

*Benson v. Greenville National Exchange Bank,* 253 S.W.2d 918 (Tex. Civ. App.—Texarkana 1952, writ ref'd n.r.e.) ...............................................................11

*Car, Ltd. v. Smith,* 590 S.W.2d 738 (Tex. Civ. App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.)..............................................................................................35

*Carr v. Hunt,* 651 S.W.2d 875 (Tex. App.—Dallas 1983, writ ref'd n.r.e.) ...........32

*Casteel v. Gunning,* 402 S.W.2d 529 (Tex. Civ. App.—El Paso 1966, writ ref'd n.r.e.) ...............................................................................................................11

*Cearly v. Cearly,* 544 S.W.2d 661 (Tex. 1976).......................................................8

*Central Power & Light Co. v. Purvis,* 67 S.W.2d 1086 (Tex. Civ. App.—San Antonio 1934, writ ref'd) ...............................................................................10

*Citizens State Bank v. O'Leary,* 167 S.W.2d 719 (Tex. 1942) ...........................9, 11

*Cloughly v. NBC-Bank-Seguin, N.A.,* 773 S.W.2d 652 (Tex. App.—San Antonio 1989, writ denied)...........................................................................................9

*CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.,* 222 S.W.3d 880 (Tex. App.—Dallas 2007, pet. denied). ........................................................... 33, 36

*Coleman v. Klockner & Co. AG,* 180 S.W.3d 577 (Tex. App.—Houston [14th Dist.] 2005, no pet.) .....................................................................................33

*Crim Truck & Tractor v. Navistar Intern. Transp. Corp.,* 823 S.W.2d 591 (Tex. 1992) ..............................................................................................................9, 10

*Crooks v. M1 Real Estate Partners, Ltd.,* 238 S.W.3d 474 (Tex. App.—Dallas 2007, pet. denied) ......................................................................................33

*Crowell v. Bexar County*, 351 S.W.3d 114 (Tex. App.—San Antonio 2011, no pet.) .................................................................................................. 13, 22

*Daugherty v. McDonald,* 407 S.W.2d 954 (Tex. Civ. App.—Fort Worth 1966, no writ)..................................................................................................32

*Davis v. Davis*, 495 S.W.2d 607 (Tex. Civ. App.—Dallas 1973, writ dism'd) ........8

*Dow Chem. Co. v. Francis*, 46 S.W.3d 237 (Tex. 2001).......................................56

*First National Bank v. Roberts,* 286 S.W.2d 462 (Tex. App.—Austin 1956, no writ)..................................................................................................54

*Gaines v. Kelly,* 235 S.W.3d 179 (Tex. 2007) ......................................................33

*Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757 (Tex. 2003)....................57

*Golden Spread Elec. Coop., Inc. v. Denver City Energy Assoc., L.P.,* 269 S.W.3d 183 (Tex. App.—Amarillo, pet. denied) ........................................................29

*Harding Co. v. Sendero Resources, Inc.,* 365 S.W.3d 732 (Tex. App.—Texarkana 2012, pet. denied) .................................................................. 35, 36

*Herbert v. Herbert*, 754 S.W.2d 141 (Tex. 1988) ..................................................57

*In re FH Partners, L.L.C.*, 335 S.W.3d 752 (Tex. App.—Austin 2011, no pet.) ................................................................................................. passim

*In re: ADM Investor Servs.,* 304 S.W.3d 371 (Tex. 2010).....................................33

*In re: J. Rains, Annuitant*, 2015 Tex. App. LEXIS 8219 (Tex. App.—Amarillo 2015, no pet. h.) ................................................................................ passim

*Intermedics, Inc. v. Grady*, 683 S.W.2d 842 (Tex. App.—Dallas 1983, writ ref'd n.r.e.) ...............................................................................................32

*J.G. Wentworth Originations, LLC v. Freelon,* 446 S.W.3d 426 (Tex. App.—Houston [1st Dist.], no pet.) ............................................................. 18, 49, 54

*J.G. Wentworth Originations, LLC v. Perez*, 2014 Tex. App. Lexis 8798 (Tex. App.—Houston [1st Dist.], no pet.) ................................................. 18, 49, 54

*Jarvis v. K&E Re One, LLC,* 390 S.W.3d 631 (Tex. App.—Dallas 2012, no pet.)32, 33

*Johnson v. Holly Farms of Texas, Inc.,* 731 S.W.2d 641 (Tex. App.—Amarillo 1987, no writ)......................................................................................32

*Johnson v. Structured Asset Services, LLC,* 148 S.W.3d 711 (Tex. App.—Dallas 2004, no pet.) ............................................................... 10, 11

*Levine v. Bayne*, 92 S.W.3d 1 (Tex. App.—San Antonio 1999)............................14

*Lone Star Partners v. NationsBank Corp.,* 893 S.W.2d 593 (Tex. App.—Texarkana 1994, writ denied)..................................................................36

*Madison & Pennings, Inc. v. Foundation Engineering Co.,* 390 S.W. 2d 48 (Tex. App.—Houston [1st Dist.], 1965 no writ).......................................................54

*McMillan v. Rutherford,* 14 S.W.2d 132 (Tex. Civ. App.—Amarillo 1929, no writ) ....................................................................................................................54

*Menger v. Ward*, 87 Tex. 622, 30 S.W. 853 (Tex. 1895) .......................................15

*Mischer v. Burke*, 456 S.W.2d 550 (Tex. Civ. App.—Houston [1st Dist.] 1970, writ ref'd n.r.e)................................................................................................11

*Nahm v. J.R. Fleming & Co.,* 116 S.W.2d 1174 (Tex. Civ. App.—Eastland 1938, no writ)..........................................................................................................34

*Nathan A. Watson Co. v. Employers Mut. Cas. Co.,* 218 S.W.3d 797 (Tex. App.—Fort Worth 2007, pet. denied) ..................................................................32

*Paragon Indus. Applications, Inc. v. Stan Excavating, LLC*, 432 S.W.3d 542 (Tex. App.—Texarkana 2014, no pet.) ...............................................................33

*Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex. 1986) ..........................................56

*Ross v. Sep,* 154 S.W.2d 958 (Tex. Civ. App.—Texarkana 1941, writ ref'd.) .......34

*Ross v. Tex. One P'ship,* 796 S.W.2d 206 (Tex. App.—Dallas 1990, writ denied)35

*Royal Indem. Co. v. Marshall*, 388 S.W.2d 176 (Tex. 1965)................................29

*Salinas v. Allen*, 366 S.W.3d 842 (Tex. App.—Amarillo 2012, no pet.) ................57

*Settlement Capital Corporation et al. v. State Farm Mutual Automobile Insurance Company et al,* 646 N.W.2d 550 (Minn Ct. App. 2002)...............................59

*State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996) .............. 11, 12

*Texas Mun. League Intergovernmental Risk Pool v. Tex. Workers Comp. Comm'n.,* 74 S.W.3d 377 (Tex. 2002) .........................................................................9

*Townsend v. Univ. Hosp.,* 83 S.W.3d 913 (Tex. App.—Texarkana 2002, pet. denied) ........................................................................................33

*Transcon. Realty Investors, Inc. v. Wicks*, 2014 Tex. App. LEXIS 8504 (Tex. App—Dallas 2014, pet. denied) ...................................................9

*United Residential Props., L.P. v. Theis,* 378 S.W.3d 552 (Tex. App.—Houston [14th Dist.] 2012, no pet.).............................................. 32, 33

*Vaughn v. DAP Fin. Servs., Inc.*, 982 S.W.2d 1 (Tex. App.—Houston [1st Dist.] 1997, no pet.) ...............................................................13

*Vernor v. Southwest Federal Land Bank Ass'n*, 77 S.W.3d 364 (Tex. App.—San Antonio 2002, pet. denied) ............................................... 9, 13, 16

*Walker Ins. Servs. v. Bottle Rock Power Corp.,* 108 S.W.3d 538 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ......................................... 33, 36

*Walker v. Walker,* 619 S.W.2d 196 (Tex. Civ. App.—Tyler 1981, writ ref'd n.r.e.) ...............................................................................45

*Washington Square Financial, LLC D/B/A Imperial Structured Settlements v. RSL Funding, LLC*, 418 S.W.3d 761 (Tex. App.—Houston [14th Dist.] 2013. pet. denied) ...............................................................................11

*Wright v. Sydow,* 173 S.W. 3d 534 (Tex. App.–Houston [14th Dist.] 2004, pet. denied) ...............................................................................17

**Statutes**

26 U.S.C. § 5891 ...............................................................................47

TEX. BUS. & COM. CODE § 2.210 ...........................................................13

TEX. CIV. PRAC. & REM. CODE § 141.002...............................................54

TEX. CIV. PRAC. & REM. CODE § 141.004.................................... 11, 42, 43

TEX. CIV. PRAC. & REM. CODE § 31.002..................................................29

TEX. CIV. PRAC. & REM. CODE §§ 141.001 et seq. ............................ passim

TEX. CIV. PRAC. & REM. CODE §§ 63.001 et. seq......................................29

TEX. PROP. CODE § 12.014 ...................................................................54

TEX. TAX CODE § 1.04 ..........................................................................9

Wɪs. Sᴛᴀᴛ. § 806.18 ...................................................................................54

**Rules**

Tᴇx. R. Aᴘᴘ. P. 39 .................................................................................... xi

**Other Authorities**

3 Tᴇx. Jᴜʀ. Aɢᴇɴᴄʏ § 19 ........................................................................33

4 Arthur Corbin, *Corbin on Contracts*, §§ 868-869 (1951) ....................................13

7 Tᴇx. Jᴜʀ. 3ᴅ Aꜱꜱɪɢɴᴍᴇɴᴛꜱ § 8 (1997) .................................................10

Rᴇꜱᴛᴀᴛᴇᴍᴇɴᴛ (Sᴇᴄᴏɴᴅ) ᴏꜰ Cᴏɴᴛʀᴀᴄᴛꜱ § 317 (1981) ...........................................13

Tᴇx. Jᴜʀ. 3ᴅ Cᴏʀᴘᴏʀᴀᴛɪᴏɴꜱ § 390.......................................................33

Tᴇx. Jᴜʀ. Jᴜᴅɢᴍᴇɴᴛꜱ § 623 ..................................................................54

Walter W. Cook, *The Alienability of Choses in Action,* 29 Harv. L. Rev. 816
    (1916)...................................................................................12

## REQUEST FOR ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 39, Appellee Peachtree Settlement Funding, LLC respectfully requests the opportunity to present oral argument in this appeal.

No. 01-15-00147-CV

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS AT HOUSTON

*Metropolitan Life Insurance Company and Metropolitan Insurance & Annuity Company*,

Appellants,

*Peachtree Settlement Funding, LLC and Sara Swain,*

Appellees.

Appeal from Cause No. 201474548
In the 234th Judicial District Court, Harris County, Texas

**BRIEF OF APPELLEE PEACHTREE SETTLEMENT FUNDING, LLC**

TO THE HONORABLE COURT OF APPEALS:

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

In 2001, a lawsuit was settled on behalf of Sara Swain ("Swain"), who was then 16 years old, by her maternal grandparents in Wisconsin. (RR Vol. 2 at pp. 7-8). That lawsuit arose from an accident that resulted in the death of Swain's mother. (RR Vol. 2 at p. 7)[1]. The case was settled by way of a structured settlement and Swain became entitled to receive monthly payments from the settling parties

---

[1] References to the record shall be "CR" for the Clerk's Record; "SUPP. CR" for the Supplemental Clerk's Record; "RR" for the Reporters Record for the February 2, 2015 hearing; and "SUPP. RR" for the Reporter's Record for the April 6, 2015 hearing.

**BRIEF OF APPELLEE PEACHTREE SETTLEMENT FUNDING, LLC – PAGE 1**

identified in the settlement agreement (the "Settlement Agreement"). (RR Vol. 2 at p. 8). Because she was a minor, the settlement was approved by a Wisconsin court (the "Wisconsin Order").

Metropolitan Insurance & Annuity Company ("Metropolitan Annuity") assumed the obligation to make the payments due Swain under the Settlement Agreement (the "Settlement Payments") by way of a "qualified assignment." (CR 31). Metropolitan Annuity funded its obligation to make the Settlement Payments by purchasing an annuity (the "Annuity") from an affiliate, Metropolitan Life Insurance Company ("Metropolitan Life"). (CR 31).[2] Neither Metropolitan Annuity nor Metropolitan Life (sometimes collectively referred to as "MetLife") was a party to the Settlement Agreement or the Wisconsin Order.

Swain became entitled to receive monthly payments of $1,460.00 per month commencing May 10, 2010, when she reached age 25, continuing for the duration of her life, guaranteed for 40 years (through April 10, 2050) and increasing 3% annually each May. (CR 30-21).

It is undisputed that Swain is entitled to receive the Periodic Payments and that MetLife is obligated to make the Periodic Payments to Swain. The right to

---

[2] The payments due and payable by Metropolitan Life under the Annuity, which correspond to the Settlement Payments in terms of the timing and amount of same, shall be referred to as the "Annuity Payments." The Settlement Payments and Annuity Payments shall sometimes be referred to collectively as the "Periodic Payments."

receive the Periodic Payments belongs to Swain and that right is an intangible property right. It is undisputed that MetLife does not own any right, title or interest in the Periodic Payments.

In 2015, Swain developed a need for liquidity relative to a portion of her Periodic Payments. She wanted to purchase a home. (SUPP. RR at pp. 9-10). Swain agreed to assign to Peachtree a portion of her monthly Periodic Payments from May 2015 through April 2026. (CR 14-27). In return, Peachtree agreed to pay Swain a lump sum of $49,716.26 (the "Purchase Price").[3] (CR 14-27). Swain agreed to assign to Peachtree one hundred thirty-two (132) partial monthly payments of $495 each out of her total monthly payment from May 2015 through April 2026 (the "Peachtree Assigned Payments,") (CR 26).[4] Both the total monthly payment and the Peachtree Assigned Payments increased 3% each year. From May 2015 through April 2016, for example, the monthly Periodic Payments are $1,643.24, of which Swain assigned to Peachtree $ 495.00 and retained $1,148.24 per month.[5]

As part of the proposed Swain-Peachtree Transfer and as required by Chapter

---

[3] Originally, Swain and Peachtree agreed to a purchase price of $41,334.00. (CR 27). Swain and her Grandfather (who advised her in the transaction) negotiated a higher price, increasing the purchase price to $49,716.26. (SUPP. RR at p. 11, lines 4-5). The payments to be transferred and assigned to Peachtree did not change.

[4] The transaction by and between Peachtree and Swain will be referred to as the "Swain-Peachtree Transfer".

[5] A schedule of the monthly Periodic Payments due and payable during the 132 month Term (the "Term Payments"), the portion transferred and assigned to Peachtree (the Peachtree Assigned Payments), and the portion to be received by Swain (the Swain Retained Payments) was admitted as an exhibit by the trial court.

141 of the Texas Civil Practice & Remedies Code (the "Texas Transfer Statute"), Swain received a disclosure statement from Peachtree and executed a Purchase Contract (the "Transfer Agreement"). (CR 14-27). On or about December 30, 2014, Peachtree initiated a legal proceeding in the 234th District Court by filing an application for approval of the transaction. (CR 3-7). Peachtree filed an Amended Application for Approval of Sale of Partial Payment Rights (the "Amended Application", CR 8-27) on January 8, 2015 and secured a hearing on the Amended Application on February 2, 2015 and provided notice to all "interested parties," including MetLife. (CR 8-27).

Metropolitan Life and Metropolitan Annuity, as interested parties, appeared and opposed the Swain-Peachtree Transfer by filing an Opposition to Application for Approval of Transfer of Structured Annuity Benefits ("MetLife Opposition"). (CR 28-51). MetLife urged the Court to deny court approval of the transaction on a number of grounds, even though MetLife routinely remains neutral in such transactions and even though the transaction would have ZERO impact on MetLife.

MetLife opposed the Swain-Peachtree Transfer, contending:

- the transaction violated the Texas Transfer Statute by requiring MetLife to divide payments;
- there was no legal basis for imposing a Servicing Arrangement on MetLife, circumventing the Texas Transfer Statute's prohibition against compelling MetLife to divide payments;
- Peachtree was not entitled to mandatory, injunctive relief against MetLife;
- the Servicing Arrangement raised constitutional and practical

concerns;

- the Swain-Peachtree Transfer was barred by anti-assignment language;
- Peachtree failed to establish that the transfer was in Swain's best interest;
- because Metropolitan Annuity owned the Annuity, Swain had no right to assign any payments.

(CR 32-50). Peachtree responded to the MetLife Opposition by filing its Brief in Support of Application for Transfer of Structured Settlement Payments and in Reply to Metropolitan Life Insurance Company and Metropolitan Insurance & Annuity Company's Objection (the "Peachtree Response," CR 54-80) and an Appendix in Support of Peachtree Settlement Funding, LLC's Response.[6]

At a hearing on February 2, 2015, the trial court overruled MetLife's Opposition and signed a Final Order Approving Transfer of Structured Settlement Payments (the "Final Order,") approving the Swain-Peachtree Transfer. (CR 89-95). A Servicing Arrangement was included in the Final Order, whereby Peachtree would receive the Term Payments from MetLife, retain the Peachtree Assigned Payments, and remit the Swain Retained Payments to Swain.

MetLife filed a Notice of Appeal on February 13, 2015. (CR 96-98). Peachtree filed a Motion for New Trial and/or to Supplement the Record and Present

---

[6] The Appendix in Support of Peachtree's Response was not included in the record in this case. Some documents that were included in the aforementioned appendix are included in the Appendix to this Brief and will be referenced accordingly.

Additional Testimony on March 3, 2015 (the "Motion to Supplement,").[7] (CR 107-111). As set forth in the Motion to Supplement, the trial court had a busy docket on February 2, 2015 and although Swain attended the February 2nd hearing and addressed her reasons for wanting to complete the Swain-Peachtree Transfer, and was questioned by Judge Wesley Ward, the exchange was not on the record. (CR 108-109). At the April 6th hearing, Swain testified as to her personal and financial situation and her reasons for wanting to complete the Swain-Peachtree Transfer. (SUPP. RR at pp. 6-11). MetLife's counsel appeared at the April 6th hearing, opposed the Motion to Supplement, and cross-examined Swain. (SUPP. RR at pp. 13-14). Judge Ward acknowledged that he and Swain had discussed the transaction at the earlier hearing and confirmed with Swain that the statements she made to the court at on February 2 were true and correct. (SUPP. RR at pp. 5-6)

Following the hearing, Judge Ward signed an Order Granting the Motion to Supplement the Record and Present Additional Testimony and an Order Confirming and Reaffirming Final Order Approving Transfer of Structured Settlement Payment

---

[7] Peachtree filed the Motion to Supplement in order to extend the trial court's plenary power, so that the testimony of Swain, which had previously been offered at the February 2nd hearing but did not appear in the record, would appear on the record. Swain's reason for entering into the Transfer Agreement with Peachtree was to put a down payment on a home. (RR at p. 37, lines 15-22). At the beginning of the February 2nd hearing and before the Judge went on the record, Swain told the Judge about her plans to purchase a home. By the time of the April 6th hearing, Swain had, in fact used the funds she received in connection with the Swain-Peachtree Transfer to purchase a home, which purchase was closing that same week. (SUPP. RR at p. 10, lines 3-13).

Rights.[8] (SUPP. CR 12-16).

## SUMMARY OF THE ARGUMENT

At its core, MetLife's contention is that MetLife cannot be compelled by the Texas Transfer Statute to divide payments AND the trial court erred when it signed the Final Order, which included a Servicing Arrangement, whereby MetLife would deliver the Term Payments to Peachtree and Peachtree would receive a portion of said payments (the Peachtree Assigned Payments) as a transferee/assignee and a portion (the Swain Retained Payments) as a payment agent. MetLife opposed the Servicing Arrangement, in effect refusing to allow Swain to transfer and assign partial payments, even though the proposed transfer and the Final Order, including the Servicing Arrangement, did not adversely impact or affect MetLife.

MetLife contends that the Final Order improperly modifies and rewrites its contracts with Swain and contravenes the Texas Transfer Statue. Yet, MetLife ignores the basic principles of principal-agency law and refuses to recognize that the Final Order properly designates Peachtree as Swain's payment agent for the Swain Retained Payments. MetLife's contracts with Swain remain in effect. There has been no material alteration of MetLife's payment obligations and the Final Order and the Texas Transfer Statute make clear that MetLife will fulfill its payment

---

[8] Although MetLife opposed the Motion to Supplement below, MetLife has not appealed the trial court's decision to grant said motion, hold the second hearing, and allow Peachtree and Swain to supplement the record.

obligations by complying with the Final Order. The Final Order does not contravene the Texas Transfer Statute.

The trial court's determination that the transfer was in Swain's best interest is not contrary to the evidence and did not constitute an abuse of the court's discretion. MetLife's other buffet of legal arguments – that the Final Order improperly imposes a mandatory business/contractual or principal-agency relationship on MetLife and Peachtree, violates the Wisconsin Order, and materially and adversely impacts MetLife are all without merit and are not supported by the record or Texas law. The Final Order should be affirmed.

## ARGUMENT AND AUTHORITIES

**A.** ***The right to receive structured settlement payments is a property right; such rights are freely assignable and alienable; and restraints against alienability are disfavored and strictly construed under Texas law.***

In light of MetLife's arguments below and on appeal, an examination of common law principles relating to alienability and assignability of property and contract rights, including the right to receive payments in the future, is relevant and instructive.

Property includes both real and personal property and includes obligations, rights and other intangibles. *Davis v. Davis*, 495 S.W.2d 607, 611 (Tex. Civ. App.—Dallas 1973, writ dism'd) *overruled on other grounds Cearly v. Cearly*, 544 S.W.2d 661 (Tex. 1976). It has long been the rule in Texas that contractual rights are

personal property. *See Centex Constr. Co. v. Kennedy,* 332 F. Supp. 1213, 1215 (S.D. Tex 1971). Intangible personal property includes:

> a claim, interest . . . right, or other thing that has value but cannot be seen, felt, weighed, measured or otherwise perceived by the senses although its existence may be evidenced by a document. It includes a stock, bond, note, or account receivable . . . insurance policy, annuity, pension, cause of action, contract, and goodwill.

TEX. TAX CODE § 1.04(6); *see also Texas Mun. League Intergovernmental Risk Pool v. Tex. Workers Comp. Comm'n.,* 74 S.W.3d 377, 387 (Tex. 2002).

Texas courts have long recognized that all species of property are freely assignable. *Citizens State Bank v. O'Leary,* 167 S.W.2d 719, 721 (Tex. 1942). Any species of property is assignable and everything which can be called a debt may be assigned. *In re FH Partners, L.L.C.*, 335 S.W.3d 752, 766-767 (Tex. App.—Austin 2011, no pet.); *Cloughly v. NBC-Bank-Seguin, N.A.*, 773 S.W.2d 652, 655 (Tex. App.—San Antonio 1989, writ denied).

The Texas Supreme Court has held that "<u>as a general rule, all contracts are assignable.</u>" *Crim Truck & Tractor v. Navistar Intern. Transp. Corp.,* 823 S.W.2d 591, 596 (Tex. 1992) (emphasis added); *see also Transcon. Realty Investors, Inc. v. Wicks*, 2014 Tex. App. LEXIS 8504, *7 (Tex. App—Dallas 2014, pet. denied); *FH Partners*, 335 S.W.3d at 766-767; *Vernor v. Southwest Federal Land Bank Ass'n*, 77 S.W.3d 364, 366 (Tex. App.—San Antonio 2002, pet. denied). The Texas Supreme Court noted that an exception to this general rule of assignability "is that a

contract that relies on the personal trust, confidence, skill, character or credit of the parties, may not be assigned without the consent of the parties." *Crim Truck*, 823 S.W.2d at 596.

Even where a contract is not assignable, the right to receive payments under the contract is assignable. *In re: Martin,* 117 B.R. 243, 249 (Bankr N.D. Tex. 1990). Except as provided by statute, contracts calling for the payment of money are assignable. 7 TEX. JUR. 3D ASSIGNMENTS § 8 (1997). All contracts and contract rights are assignable unless the assignment is contrary to public policy or the contract involves a matter of trust and confidence. *See Central Power & Light Co. v. Purvis*, 67 S.W.2d 1086, 1088 (Tex. Civ. App.—San Antonio 1934, writ ref'd); *In re Martin*, 117 B.R. at 249.

Courts in Texas have held that structured settlement payments may be assigned (even when the assignment occurred prior to the enactment of the Texas Transfer Statute and was not court approved) and such assignments are not contrary to Texas public policy. *Johnson v. Structured Asset Services, LLC,* 148 S.W.3d 711, 731 (Tex. App.—Dallas 2004, no pet.) ("We agree with the majority of the courts that the assignment of structured settlement payments is not against public policy."); *Settlement Capital Corporation, Inc. v. Pagan,* 649 F. Supp. 2d 545, 557 (N.D. Tex.

2009), *citing Johnson*.[9] With the enactment of the Texas Transfer Statute, the Texas Legislature has unequivocally determined and acknowledged that structured settlement payments may be lawfully assigned, albeit in accordance with a state statute that provides for court approval of such transactions.

It is not the policy of the law of this State to favor restraints upon the alienation of property. *Citizens State Bank,* 167 S.W.2d at 721. Alienability is a legal incident of property and restrictions against it are contrary to public policy. *Benson v. Greenville National Exchange Bank*, 253 S.W.2d 918, 923 (Tex. Civ. App.—Texarkana 1952, writ ref'd n.r.e.). Generally speaking, property may be freely sold and delivered, subject to reasonable restrictions which have been properly imposed. *Mischer v. Burke*, 456 S.W.2d 550 (Tex. Civ. App.—Houston [1st Dist.] 1970, writ ref'd n.r.e). Such restrictions are usually regarded with disfavor and are strictly construed. *Casteel v. Gunning*, 402 S.W.2d 529, 538 (Tex. Civ. App.—El Paso 1966, writ ref'd n.r.e.).

In 1996, the Texas Supreme Court examined the change in the law over time relating to the alienability of choses in action in *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996). While not directly on point, as that case

---

[9] The 14th Court of Appeals has determined that a contract to transfer and assign structured settlement payments that has not received the "statutorily required court approval" mandated by TEX. CIV. PRAC. & REM. CODE § 141.004 is unenforceable and contrary to public policy. *Washington Square Financial, LLC D/B/A Imperial Structured Settlements v. RSL Funding, LLC*, 418 S.W.3d 761, 769-770 (Tex. App.—Houston [14th Dist.] 2013. pet. denied).

involved the assignment of a chose in action lying in tort, the discussion of the change in the law relating to free alienability of property rights is relevant. In *Gandy*, the Texas Supreme Court noted that at early common law, "a chose in action could not be assigned," but that as early as the fifteenth century, the common-law rule against alienability began to give way to the demand of commerce that assigned debts are enforceable. *Gandy*, 925 S.W. 2d at 706, *citing* Walter W. Cook, *The Alienability of Choses in Action,* 29 Harv. L. Rev. 816, 821 (1916). Justice Hecht wrote that the "pressures against the rule of inalienability were commercial and thus affected only debts and other contractual rights that were not personal to the owner and could survive to his estate up on his death." *Gandy*, 925 S.W.2d at 706. The only remnants of the rule against alienability of choses in action to survive passage of the common law to America were those pertaining to some torts. *Id.* Justice Hecht noted that only five days after the Republic of Texas adopted the common law in 1840, a statute was enacted allowing the assignment of negotiable and non-negotiable written instruments. *Id.* Even "contract rights not covered by the statue could be assigned." *Id*. at 707.

A contractual right can be assigned, unless the assignment materially changes the duty of the obligor, or materially increases the burden or role imposed on the obligor by the contract, or materially impairs the obligor's chance of obtaining return performance. *In re: Martin*, 117 B.R. at 249; RESTATEMENT (SECOND) OF

CONTRACTS § 317(2)(9) (1981); 4 Arthur Corbin, *Corbin on Contracts*, §§ 868-869 (1951); *see* TEX. BUS. & COM. CODE § 2.210(b).

Numerous Texas courts of appeal, including this Court, have followed the precedents and jurisprudence of the Texas Supreme Court relating to the assignment of contract rights and debts. *See Crowell v. Bexar County*, 351 S.W.3d 114, 117 (Tex. App.—San Antonio 2011, no pet.) (Generally all contracts are assignable, rejecting claim of debtors on promissory note that lender's assignee could not enforce terms of the note.); *Vaughn v. DAP Fin. Servs., Inc.*, 982 S.W.2d 1, 14 (Tex. App.—Houston [1st Dist.] 1997, no pet.); *Vernor*, 77 S.W.3d at 366. In *Vernor,* the San Antonio Court of Appeals rejected the debtor/obligor's argument that the assignment of a note was an exception to the general rule that all contracts are assignable, because it was a promissory note that relied on the personal credit of the parties. *Vernor*, 77 S.W.3d at 366. Only the debtor/obligor's credit was implicated, not the assignor's (the bank that assigned the note), and thus the <u>note was assignable as a matter of law.</u> *Id*. (emphasis added).

In *Crowell* the court noted that the deed in question provides that all rights under the deed inure to the "respective successors <u>and assigns</u>*"* of the parties and was thus freely assignable. *Crowell*, 351 S.W.3d at 118. (emphasis in original).[10]

---

[10] The underlying Settlement Agreement and Qualified Assignment in this case includes a similar provision which provide that the settlement agreement would be binding on and inure to the benefit of the parties and their respective "successors and assigns." (See footnote 15 herein).

The San Antonio Court of Appeals also rejected an argument that a contract for attorneys' fees was not assignable because it involved personal services and trust of the parties. *Levine v. Bayne*, 92 S.W.3d 1, 5 (Tex. App.—San Antonio 1999), *rev'd on other grounds,* 40 S.W.3d 92 (2001). The attorneys could assign their accounts receivable without securing the consent of the parties obligated to pay said fees. *Id.*

The Austin Court of Appeals also recognized the "presumption or general rule under Texas law . . . that all contracts are freely assignable." *FH Partners,* 335 S.W.3d at 760. "It is the longstanding rule in Texas that the right to collect a debt – including not only debts based in contract but also the broader category of rights to recover money known as choses in action–is generally assignable." *Id.* at 760 (*citing Gandy* and *Citizens State Bank*).

The *FH Partners* case involved an action by the assignee (FH Partners) to enforce a loan and security agreement (the Agreement) against a builder of residential swimming pools (the Pool Companies). *Id.* at 753-787. The loan had originally been made by State Bank and upon default, the loan was assigned to FH Partners. *Id.* at 754. The court examined long-established authorities and the history of alienability and assignability of contracts and property rights. *Id.* at 761-767. Citing to long-established Texas Supreme Court precedent, the *FH Partners* court held that "at one time no non-negotiable obligation was assignable. But this was by reason of a state and stage of society and a dominant sentiment that have long passed.

The doctrine has been abandoned even in theory." *Id.* at 762.

The Pool Companies, which were obligated to make the payments and were challenging the assignment, unsuccessfully argued that the "general rule" derives solely from contract language that specifically permits assignment, the negotiability of the instrument in question, or statutes that have been repealed or did not apply. Those arguments were rejected by the Austin Court of Appeals. *Id.* at 762. The Pool Companies also argued that the right to receive the loan payments could not be assigned without their consent. That contention was also rejected and the court rebuffed the Pool Companies' efforts to "avoid the general rule," by invoking the exception that a contract that relies "on the personal trust, confidence, skill, character or credit of the parties" is not assignable. *Id.* at 762.

> The notion underlying this 'personal trust … or credit' exception is that the general policy of free assignment should yield to a contracting party's interest in choosing the person with whom it deals with respect to certain types of contractual rights or duties that, by their nature, contemplate or require performance only by a specific person.

*Id. citing Menger v. Ward*, 87 Tex. 622, 30 S.W. 853, 855 (Tex. 1895) (emphasis added) ("Rights arising out of a contract can not [sic] be transferred if they involve a relation of personal confidence, such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided."). These types of rights or duties:

> arise on account of suretyship; technical guaranty; personal relationship, as between master and servant; personal skill or services,

as in such a case, or that of an attorney for his client; personal terms of contract, as where a particular obligee is made the measure of performance, the agreement is to supply what he "needs," or he is to be "satisfied"; or confidence or trust, as from lender toward borrower—it being everywhere conceded that in such instances a man has a right to choose the individuals with whom he will deal.

*FH Partners,* 335 S.W.3d at 762-763. "But, saving exceptions of these kinds, the full and unexceptional liberty of restricting alienation of contractual rights has given way," and Texas law has been quite "liberal in favoring assignment." *Id*.

The Court agreed with FH Partners' argument that the "personal trust or credit" exception, which prevents debtors from unilaterally assigning their obligations without creditors' consent, did not restrict a creditor from assigning its corresponding rights against the debtor. *Id.* at 764.

There is simply no Texas authority holding that a creditor's right to receive payment on a debt is the sort of contractual right that Texas law regards as being predicated on a debtor's 'personal trust … or credit' in a creditor, such that the creditor cannot freely assign that right.

*Id. citing Vernor,* 77 S.W. 3d at 366. "No Texas court has so held and, lacking such authority, we will not be the first." *Id*.

Because State Bank (the assignor and original creditor) was not required to obtain the Pool Companies' consent for the assignment, the absence of such consent could not render the assignment invalid. *Id.* At 767. By refusing to recognize FH Partners' rights as an assignee, the trial court abused its discretion. *Id*.

The Periodic Payments are unquestionably the property of Swain. As

discussed above, Texas law and public policy has long recognized the importance of free alienability and assignability of property rights, which includes intangible property like structured settlement payments.[11]  Although Texas law does require such transfers to be court approved in accordance with the Texas Transfer Statute, Texas law and the state's public policy allows Texas citizens (like Swain) to transfer and assign structured settlement payments in transactions which are court approved in accordance with the Texas Transfer Statute.  Nothing in the Texas Transfer Statute nor in the other laws of this state or the decision of its courts suggest or support a conclusion that MetLife might unilaterally obstruct the Swain-Peachtree Transfer by withholding their consent to said transaction or to the Servicing Arrangement approved by the trial court to facilitate said transaction.

MetLife's has sought to restrict and restrain Swain's right to liquidate, through a court-approved assignment, a portion of her future payment rights by relying on inapplicable legal principles, an absurd interpretation of the Texas Transfer Statute, and speculative and fanciful arguments of potential prejudice and possible liability if the trial court's decision is affirmed.  MetLife's appeal, and its arguments aimed at obliterating the court-approved transfer, must be examined in light of the Texas legal authorities and public policy detailed above which favor free alienability of

---

[11] A state's public policy is embodied in its constitution, statutes, and the decisions of its courts. *Wright v. Sydow,* 173 S.W. 3d 534, 551 (Tex. App.–Houston [14th Dist.] 2004, pet. denied).

property rights.

**B. By approving the Swain-Peachtree Transfer and rendering the Final Order, employing a Servicing Agreement to facilitate Swain's desire to transfer partial payments, the trial court did not improperly "rewrite" the underlying contracts between Swain and MetLife.**

MetLife opposed the Swain-Peachtree Transfer in the trial court on a number of grounds, as described on pages 4-5 above. But the crux of its legal argument is that MetLife (a) could not be forced to split payments amongst Swain and Peachtree and (b) a Servicing Arrangement whereby Peachtree would receive and service the unassigned portions of the payments to Swain as her payment agent cannot be imposed over MetLife's objection. Because the Texas Transfer Statute provides that a structured settlement obligor/annuity issuer cannot be compelled to split payments amongst payees and transferees or between multiple transferees[12], when MetLife made clear, by filing the MetLife Opposition, that it would not divide payments, Peachtree proposed the Servicing Arrangement, a tool commonly employed by funding companies to facilitate transactions when a payee desires to complete a transaction involving partial payments and the issuer/obligor refuses to divide payments amongst the payee and a transferee.[13]

---

[12] TEX. CIV. PRAC. & REM. CODE § 141.006(5) provides that "neither the structured settlement obligor nor the annuity issuer may be required to divide any periodic payment between the payee and any transferee or assignee or between two or more transferees or assignees."

[13] This Court has reviewed and condoned the use of a servicing arrangement in *J.G. Wentworth Originations, LLC v. Freelon*, 446 S.W.3d 426 (Tex. App.—Houston [1st Dist.], no pet.) and *J.G. Wentworth Originations, LLC v. Perez*, 2014 Tex. App. Lexis 8798 (Tex. App.—Houston [1st Dist.], no pet.).

Some issuers/obligors agree to divide payments amongst a payee and transferee. Some decline to divide payments and prefer that a court-approved servicing arrangement be employed by the payee and transferee. Only MetLife, amongst all structured settlement obligors/annuity issuers, refuses both to divide payments AND opposes servicing arrangements, effectively forcing payees to either liquidate 100% of specified structured settlement payments or none of them.

In order to address MetLife's refusal to divide payments and still satisfy Swain's desire to transfer and assign partial payments, so that she could purchase a home for her family and continue to receive a significant portion of her monthly payments, Peachtree advanced the Servicing Arrangement in the Peachtree Response (CR 54-80) and at both hearings. MetLife had already raised and opposed the prospect of a Servicing Arrangement in its MetLife Opposition, before Peachtree proposed same.[14]

---

[14] MetLife complains on appeal that Peachtree did not plead for a Servicing Arrangement in its Application/Amended Application. (Appellants' Brief at p. 28) Peachtree did not initially request a Servicing Arrangement because MetLife often voluntarily splits payments amongst a payee (like Swain) and a transferee (like Peachtree), allowing payees to liquidate less than 100% of specified payments. Examples of MetLife's willingness to split and divide payments are reflected in multiple Texas court orders included in the appendix filed by Peachtree in the trial court. Peachtree had no reason to know when it filed this case whether MetLife would or would not divide payments. MetLife's own arguments are contradictory, as MetLife argues that Peachtree "fights to act as servicer and does not offer the role to others" (Appellants' Brief at p. 32) and simultaneously complains that Peachtree did not request to be a servicer in its pleadings. (Appellants' Brief at p. 28). It is acceptable to Peachtree if issuers/obligors divide payments when a payee seeks to assign partial payments. Peachtree actually prefers that structure. In any event, the possibility of Peachtree and Swain proposing a Servicing Arrangement, should MetLife decline to split payments, was not a surprise to Peachtree and the issue was fully litigated. MetLife thoroughly briefed and argued the Servicing Arrangement issue in the trial court. (CR 34-41).

On appeal, MetLife's legal arguments are focused on the unassigned portions of the Term Payments, which are subject to the court-approved Servicing Arrangement. In essence, MetLife's argument is that it must consent to a Servicing Arrangement.

While Chapter 141 of the Texas Civil Practice & Remedies Code required court approval of the Swain-Peachtree Transfer, the statute does not allow the party obligated to make those payments to torpedo the transaction by withholding their consent (i) to the transfer of payments or (ii) the delegation of the right to receive unassigned payments in the case of a transfer or partial payments.

The Texas Transfer Statute constituted the concerted and deliberate decision and actions of the Texas Legislature to provide a statutory process and procedure to oversee, but definitely permit, the transfer and assignment of structured settlement payment rights. Nothing in the Texas Transfer Statute bestows upon a structured settlement obligor (like Metropolitan Annuity) or an annuity issuer (like Metropolitan Life) the right to unilaterally prevent a transfer of structured settlement payments that a Texas court finds to be in the payee's best interest and otherwise consistent with the Texas Transfer Statute by withholding its consent.

MetLife argues that the Servicing Arrangement constitute an attempt by the trial court to unilaterally modify the terms of a previously existing contract–i.e. the structured settlement documents which initially provided for payments to be made

to Swain. If that were indeed the law, then no person (generically a payee) entitled to receive future payments under any contract (whether under a structured settlement or some other contract) could <u>ever</u> assign their contractual right to receive the payments without the consent of the party obligated to make said payments, because such a change (in the view of MetLife) would constitute a unilateral "rewrite" and "modification" of the obligation to make the payments to the person identified in the contract. That is simply not the law in Texas.

While MetLife has the right to contract with the party of its choice, <u>unless</u> that contract involved a matter of "personal trust, confidence, skill, character or credit of the parties" it does not have the absolute right under Texas law to insist that it forever make payments (whether assigned or pursuant to a court-approved Servicing Arrangement) only to the party with whom it originally contracted. That would be true whether or not the Texas Transfer Statute existed. MetLife's only obligation relative to the Periodic Payments is to make those payments to Swain (or to her "successors or assigns," as set forth in the underlying Settlement Agreement and Qualified Assignment),[15] or to her payment agent, as provided in the Final Order on

---

[15] MetLife filed various documents as part of its Appendix to its Appellants' Brief, including redacted copies of the purported Settlement Agreement, Qualified Assignment, Annuity, and the Wisconsin Order (Appendix to Appellant's Brief, pp. 24-39). NONE of these documents appear in the Record (either in the Clerk's Record or in the Reporter's Record). NONE of these documents were offered or admitted into evidence at either hearing conducted by the trial court. <u>Nevertheless, both the Settlement Agreement and the Qualified Assignment (the Annuity was a contract between Metropolitan Annuity and Metropolitan Life and neither Swain nor her guardian were parties to the Annuity), provide that those documents are "binding upon and inure to the</u>

the dates that they are due. There is no return performance required of Swain and the contract does not depend on any personal trust, confidence, skill, character or credit of Swain.

No one disputes that parties have a right to choose the person to whom they will provide credit or insurance, or choose to paint their portrait or play quarterback for their football team. But once MetLife agrees to make payments to a specific person like Swain, it does not have the unfettered right to insist that it will always and forever make payments only to the original person with whom it contracted. And dressing up such an argument as "we have the right to contract with whom we choose," a "court cannot unilaterally modify our contract" or a court "cannot infringe upon our liberty to contract" does not change the fact that Texas law (the Texas Transfer Statute and Texas common law) does not support MetLife's position.

MetLife's argument that it must provide "obligor consent" to the Servicing Arrangement, is contrary to the legal principles and authorities cited herein. It is undisputed that MetLife's intransigence in refusing to split payments and opposing servicing arrangements, constitutes a disfavored restraint on the assignability rights of Swain relative to this financial asset and harms payees by restricting their ability

---

benefit of . . . " the parties' "successors and assigns" (¶ 14.0 of the Settlement Agreement and ¶10 of the Qualified Assignment). Thus, both documents contemplate that Swain could assign her right to receive the payments due under those documents. The San Antonio Court of Appeals in *Crowell* noted that the inclusion of such language in a contract makes the rights under such contract "freely assignable".

to choose to transfer and assign less than 100% of future payments. Not only is that contrary to Texas law regarding alienability of property rights, but it also defeats the overriding purpose of the Texas Transfer Statute.

MetLife is not entitled to withhold its consent to the transaction because the exception to the general rule of free assignability of contractual rights without an obligor's consent when the contract requires return performance or depends on the personal trust, confidence, skill, character, or credit of the parties, does not apply to restrict a creditor/payee from assigning its rights to receive payment from the obligor. *See FH Partners,* 335 S.W. 2d at 762-763.

There is no dispute that MetLife's obligation to make the future structured settlement/annuity payments is not a contract that depends on the personal trust, skill, or credit of Swain. MetLife simply makes the payments as they come due. There is no return performance required of Swain or any obligation on her part to do anything in order to receive the payments. Swain became entitled to receive the payments when she released and traded her tort claim for the Periodic Payments. While MetLife would not be permitted, without Swain's consent, to assign the obligation to make the Periodic Payments to another person or entity, the converse is not true.

Swain, as MetLife's creditor here, is free to assign the right to receive the future structured settlement payments, and delegate the right to receive the

unassigned payments to Peachtree. MetLife's arguments in opposing the transaction under the theory that it may choose to contract with anyone it wants and refuse to make payments to a payment agent is misplaced and wrong.

Moreover, an obligor should not be able to impede and prohibit a partial assignment of a debt, contract rights, or future structured settlement payment rights pursuant to a statutory scheme and a court order, when the procedure and process used to facilitate such partial transfer does not impact or prejudice the obligor in any way. The Texas Transfer Statute makes clear that following a court-approved transfer, MetLife is released from any and all liability and that Peachtree is liable to MetLife for any liabilities, including attorney's fees and costs, arising from MetLife's compliance with the order of the court. TEX. CIV. PRAC. & REM. CODE § 141.005(1) and (2).

### C. The Rains Case is different.

MetLife predictably peppers its Brief with references to *In re: J. Rains, Annuitant*, 2015 Tex. App. LEXIS 8219 (Tex. App.—Amarillo 2015, no pet. h.) (the "Rains Case"), effectively urging this Court to dispense with its duty to review the record and unique facts of this case and simply apply the conclusions of the Amarillo court in the Rains Case. While Peachtree maintains that the Rains Case was decided wrongly, relative to the "modification" of contract issue, it is indisputable that the Rains Case is different and distinguishable from the current case in multiple ways.

MetLife made many of the same legal arguments, both in the Hill County District Court from which the Rains Case came and in the Amarillo Court of Appeals, that they are making here. They have also made those same arguments in other Texas cases, where a payee sought to transfer partial payments and MetLife refused to divide payments, while simultaneously opposing a servicing arrangement.[16] The Rains Case was the first Texas case in which MetLife raised its many legal arguments in opposing a transfer of partial payments and a servicing arrangement. (The undersigned handled that case on appeal, but not in the trial court.) The final order submitted and signed in Rains is different from the one MetLife is attacking in this case. Moreover, several Texas trial courts have considered partial payment transfers, servicing arrangements, and final orders very similar to the Final Order in this case, and have approved partial payment transfers and servicing arrangements over MetLife's objection.[17]

MetLife's legal arguments, save for the "unilateral modification of contract

---

[16] A copy of the Table of Contents from MetLife's Appellant's Brief filed in the Rains Case is included in the Appendix at Tab 7, pp. 38-41, which sets forth the legal issues challenged by MetLife on appeal in that case.

[17] See the final orders signed in the Klemer Case (Appendix at Tab 10, pp. 52-58); the Galvan Case (Appendix at tab 8, pp. 42-48); the Hughes Case, (Appendix at Tab 13, pp. 69-77), the Turpin Case (Appendix at Tab 14, pp. 78-86), and the Cortez Case (Appendix at Tab 12, pp. 62-68. Each of those cases involved a proposed transfer of partial payments and a servicing arrangement. In each case, MetLife objected to the proposed transfer, making the same legal arguments that they have made here, including that the servicing arrangement constituted a unlawful rewrite of their contract. In each case, the trial court overruled MetLife's objection and approved the partial transfers and servicing arrangements, using an order very similar to Final Order in this case. MetLife has appealed two of those cases–the Turpin Case and the Hughes Case, but did not appeal the other three.

argument," were rejected by the Hill County District Court and that determination was left undisturbed by the appellate case. Although failing to find merit in MetLife's arguments that Wentworth and the trial court (i) improperly sought to compel MetLife to divide structured settlement payments in contravention of the Texas Transfer Statute; (ii) imposed an involuntary contractual or agency relationship on MetLife; and (iii) imposed an injunction on MetLife, the Amarillo Court, relying on inapplicable case authorities, did find that the trial court sought to unilaterally modify the underlying contract between MetLife and Ms. Rains via the court order rendered in that case. With all due respect to the Amarillo Court of Appeals, and recognizing that the form of the court order at issue in Rains Case was wanting, the conclusion was a reach and contrary to Texas law.

Of course, under Texas law, the opinion in Rains is merely persuasive, not binding, authority on this Court. Even if the Rains Case had been binding authority, it is clearly distinguishable.

The Final Order in this case (and the other orders includes in the Appendix) set forth and describe the Servicing Arrangement; identified Peachtree as Swain's "authorized payment agent;" authorized and directed MetLife to make the Term Payments to Peachtree, who was responsible for servicing and remitting the unassigned portions of same (the Swain Retained Payments) to Swain; and provided that MetLife would satisfy and discharge its payment obligations by complying with

the Servicing Arrangement and Final Order. The order which the Rains court found lacking had <u>none</u> of that.

In fact, the Rains order did not mention a servicing arrangement or payment agent at all, and only tangentially addressed the issue in a single sentence, stating that the "Annuity Issuer and Annuity Owner are not required to split structured settlement payments and shall forward the entire amount of each structured settlement payment that includes the Assigned Payment to Transferee with Transferee to retain each Assigned Payment and remit the remainder of each payment to the Payee." (Appendix at Tab 6, p. 36). The only reference to a discharge and release of the issuer/obligor in the Rains Order related to the "Assigned Payments." (Appendix at Tab 6, p. 36).

One simply cannot automatically accept the Rains Case, and its cryptic order, as relevant or decisive relative to the unique facts, issues, and Final Order in this case. Although MetLife parrots may of the same legal arguments (including the one that was relied upon in the Rains Case and the several others that were rejected), the crux of this case, being the propriety of the Final Order rendered, is different because of the substantive, legal differences between the orders.

The Rains Court ventured into dangerous waters by taking a step towards usurping the power and authority of the Texas Legislature and Texas trial courts charged with responsibility to review transactions under the Texas Transfer Statute.

The Texas Legislature bestowed upon Texas courts the sometimes unsettling task of telling competent, mature, independent adults what they can and cannot do with their financial assets. At no time, did the Texas Legislature indicate that obligor consent was also required.

The Rains court made a significant leap in transforming the legal arguments actually made by MetLife into a determination that the trial court could not approve the proposed transfer without MetLife's consent, finding that doing so would be a court mandated "modification" of the underlying contract. Surely no court would sanction an argument that an alleged "modification" of the terms of the underlying contracts was not permissible in a garnishment or child support case. Yet, that is a logical next step under the rationale in the Rains Case.

Had Swain become obligated to pay child support and a child support withholding order was served on MetLife requiring it to make payments to the child support obligee, MetLife could not oppose said withholding order based on an argument that said order constituted a "modification" of the underlying structured settlement agreement and annuity. The same would be true in the context of tax liens and in connection with the rules and statutes relating to garnishment and turnover orders. (TEX. CIV. PRAC. & REM. CODE §§ 63.001-63.008 and § 31.002). MetLife would not be permitted to ignore tax liens, garnishment judgments, and turnover orders issued under the authority of applicable Federal or State statutes simply

because they felt that the court order directing them to make payments to someone other than the person they contracted with improperly rewrote their contract.

The two cases cited by the Rains court are inapplicable and distinguishable. *Golden Spread Elec. Coop., Inc. v. Denver City Energy Assoc., L.P.,* 269 S.W.3d 183, 187 (Tex. App.—Amarillo, pet. denied) involved interpretation of a contract for "spinning reserves" of electricity for generation and sale. In *Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965), a 1965 case, the Texas Supreme Court reversed a judgment for an insured because neither the damaged automobiles at issue nor the address at which they were kept were expressly mentioned in the insurance policy at issue.

Neither of those cases involved a court order, rendered under a statutory scheme, which directed an obligor to make payments to someone other than their original contractual payee. While parties are free to contract with whom they wish, that principle is not absolute and forever.

### D. The Servicing Arrangement approved in the Final Order was appropriate and consistent with Texas principal-agency law and did not adversely or materially impact MetLife.

MetLife argues that the Servicing Arrangement amounts to imposition of an agency relationship upon MetLife over its objection. (Appellants' Brief at pp. 23-24). The trial court correctly rejected that argument. Realizing that Texas law is contrary to its position (relative to the Servicing Arrangement), MetLife tried to twist

the facts and record, contending that Peachtree and the trial court imposed upon MetLife a principal-agent relationship between Peachtree <u>and</u> MetLife. (Appellants' Brief at pp. 23-24). That simply is not the case. Peachtree never suggested or argued that it could or did create a principal-agent relationship with MetLife.

Nevertheless, a principal-agent relationship <u>was</u> created—between Swain and Peachtree. The nature and scope of that relationship was narrow and was set forth in the Final Order. In addition to receiving the Peachtree Assigned Payments, Peachtree is also to receive the <u>unassigned</u> portion of the Periodic Payments during the Term (for 132 months) and remit the unassigned portions of said payments (Retained Swain Payments) to Swain. The Final Order confirms Peachtree as <u>Swain's, NOT MetLife's, payment agent</u> and Swain and Peachtree expressly agreed and consented to, and the Final Order approved, said arrangement.

The Final Order describes the partial payments transferred and assigned to Peachtree and the partial payments to be retained by Swain. (CR 90). It authorizes and directs MetLife to pay and remit to Peachtree "as Swains' designated and authorized payment agent" the Term Payments (i.e. 100% of the monthly structured settlement/annuity payments from May 2010 to April 2026). (CR 92). It expressly sets forth Peachtree's obligations as "payment agent" and reiterates that MetLife would "discharge and satisfy" their payment obligations relating to the Term Payments by making said payments to Peachtree, and would have no current, future,

legal or contractual liability or obligation to Swain for said Term Payments. (CR 92-93).

Swain desired to transfer and assign only a portion of her monthly payments. MetLife objected to such transfer because it did not want to divide the monthly payments amongst Swain and Peachtree and could not be compelled to do so under the Texas Transfer Statute. MetLife also objected to Peachtree and Swain's proposed solution—which was the Servicing Arrangement.

Texas law is clear that a principal-agency relationship is legal and does not require the consent of anyone other than the principal and the agent (here, Swain and Peachtree). Furthermore, the legal principles which govern the principal-agent relationship protects MetLife and, in the context of the Final Order and Servicing Arrangement, facilitates the transaction desired by Swain in accordance with the Texas Transfer Statute. Nothing in the principal-agent relationship created by Swain and Peachtree violates or contravenes the Texas Transfer Statute or Texas common law or materially or adversely prejudices, changes, or abrogates MetLife's legal or contractual rights.

Agency is a consensual, legal relationship created by an express or implied agreement between the parties, or by operation of law. For there to be an agency relationship, there must be some act constituting an appointment of a person as an agent, as it is a consensual relationship. *Johnson v. Holly Farms of Texas, Inc.,* 731

S.W.2d 641, 645 (Tex. App.—Amarillo 1987, no writ) *quoting Carr v. Hunt,* 651 S.W.2d 875, 879 (Tex. App.—Dallas 1983, writ ref'd n.r.e.). Actual authority is authority a principal intentionally confers upon the agent. *Jarvis v. K&E Re One, LLC,* 390 S.W.3d 631, 639-640 (Tex. App.—Dallas 2012, no pet.); *United Residential Props., L.P. v. Theis,* 378 S.W.3d 552, 564 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

A principal may confer actual authority on an agent either expressly or by implication. *Johnson,* 731 S.W.2d at 645. *Intermedics, Inc. v. Grady,* 683 S.W.2d 842, 847 (Tex. App.—Dallas 1983, writ ref'd n.r.e.). The existence of an agency relationship may be implied from the conduct of the parties or from the facts and circumstances surrounding the transaction in question. *Johnson,* 731 S.W.2d at 645; *Intermedics,* 683 S.W.2d at 879.

The general maxim is that whatever a person may do himself/herself, he or she may do by another. *Nathan A. Watson Co. v. Employers Mut. Cas. Co.,* 218 S.W.3d 797 (Tex. App.—Fort Worth 2007, pet. denied); 3 TEX. JUR. AGENCY § 19. Any person who is not under a legal disability to act for itself and who has capacity to affect his or her legal relations by consenting to a delegable act or transaction may authorize an agent to act for him or her with the same effect as if that person were to act in person. *Daugherty v. McDonald,* 407 S.W.2d 954 (Tex. Civ. App.—Fort Worth 1966, no writ). A corporation may serve as an agent for an individual. TEX.

JUR. 3D CORPORATIONS § 390.

An "agent" is one who is authorized by a person or entity to transact business or manage some affair for the person or entity. *Coleman v. Klockner & Co. AG,* 180 S.W.3d 577, 588 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Townsend v. Univ. Hosp.,* 83 S.W.3d 913, 921 (Tex. App.—Texarkana 2002, pet. denied).

An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority). *Gaines v. Kelly,* 235 S.W.3d 179, 182 (Tex. 2007); *In re: ADM Investor Servs.,* 304 S.W.3d 371, 374 (Tex. 2010); *Jarvis,* 390 S.W.3d at 639. Actual authority is created by or through written or spoken words or conduct of the principal. *United Residential,* 378 S.W.3d at 564; *Walker Ins. Servs. v. Bottle Rock Power Corp.,* 108 S.W.3d 538, 549-550 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.,* 222 S.W.3d 880, 899 (Tex. App.—Dallas 2007, pet. denied). Express authority is delegated to an agent by words that expressly and directly authorize the agent to do an act on behalf of the principal. *Paragon Indus. Applications, Inc. v. Stan Excavating, LLC,* 432 S.W.3d 542, 549 (Tex. App.—Texarkana 2014, no pet.); *Crooks v. M1 Real Estate Partners, Ltd.,* 238 S.W.3d 474, 483 (Tex. App.—Dallas 2007, pet. denied).

An agent acting within the scope of the agent's authority binds the principal

as if the principal had performed the action taken. *Ames v. Great Southern Bank,* 672 S.W.2d 447 (Tex. 1984). What a principal does through an agent, he does himself. *Nahm v. J.R. Fleming & Co.,* 116 S.W.2d 1174 (Tex. Civ. App.—Eastland 1938, no writ). A <u>third party</u> is not liable to the principal for an agent's breach of duty if the third party did not participate in the agent's wrongful act. *Ross v. Sep,* 154 S.W.2d 958 (Tex. Civ. App.—Texarkana 1941, writ ref'd.) (emphasis added).

In effect, MetLife argues that any subsequent court order, whether a transfer order issued under the Texas Transfer Statute, or a garnishment judgment or turnover order, child support withholding order, tax lien, or other court order, which might direct MetLife to make any of the Periodic Payments to ANYONE other than Swain would amount to a court improperly and unilaterally rewriting MetLife's contractual agreements and depriving MetLife of the liberty to choose with whom to contract. Under this rationale, a court could never approve a transfer of structured settlement payment rights, or any other payment rights, nor could it issue a garnishment or turnover order, a child or spousal support withholding order, or enter a divorce decree/property division requiring MetLife to make payments to someone other than the original payee because MetLife would be making payments to someone other than the person designated in the underlying structured settlement documents.

Perhaps realizing the absurdity of such a position, MetLife limits its arguments, only claiming that the trial court rewrote its contracts by approving the

Servicing Arrangement and by directing the Swain Retained Payments to be remitted to Peachtree, not by approving the transfer/assignment of the Peachtree Assigned Payments. However, those arguments taken to their inevitable conclusion, would mean that there could never, ever be an assignment of a contract right to receive payments because an assignment necessarily changes the person to whom the payments are to be made. The fallacy of MetLife's arguments, and the inapplicability of the concept that courts cannot rewrite the contracts of parties by imposing new or additional terms on said parties to <u>this</u> case, is highlighted by these contradictory positions.

If the facts are uncontroverted or otherwise established, the existence of an agency relationship is a pure question of law. *Harding Co. v. Sendero Resources, Inc.,* 365 S.W.3d 732 (Tex. App.—Texarkana 2012, pet. denied). The question of whether a principal-agent relationship exists under established facts is a question of law for the court. *Ross v. Tex. One P'ship,* 796 S.W.2d 206, 210 (Tex. App.—Dallas 1990, writ denied). Agency may be established either by direct testimony or by circumstantial evidence such as the relationship of the parties and their conduct concerning the transaction at hand. *Car, Ltd. v. Smith,* 590 S.W.2d 738, 741 (Tex. Civ. App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.).

In order for an agency relationship to exist, there must be a meeting of the minds between the parties to establish the relationship. *Lone Star Partners v.*

*NationsBank Corp.,* 893 S.W.2d 593, 599-600 (Tex. App.—Texarkana 1994, writ denied). An agency relationship may be implied from the conduct of the parties or from the facts and circumstances surrounding the transaction in question. *Harding Co.* at 742, *citing CNOOC,* 222 S.W.3d at 899 and *Walker*, 108 S.W.3d at 550.

Swain had the legal right and authority to designate Peachtree as its payment agent, to receive Periodic Payments from May 2015 through April 2026. The Final Order approved that relationship and Swain confirmed her agreement to that arrangement in her testimony to the trial court and by approving the Final Order.[18] The agency relationship was limited in scope and term—as it related only to the arrangement whereby MetLife would make 100% of the Term Payments (which included the Peachtree Assigned Payments and the Swain Retained Payments) to Peachtree, who would then remit the Swain Retained Payments to Swain. Peachtree accepted its role as payment agent.

By virtue of the statements, acts, and conduct of the parties and the Final Order, it is clear that a principal-agent relationship was created between Swain and Peachtree relating to the Swain Retained Payments, whereby Peachtree would receive those unassigned payments as Swain's payment agent and would remit them to her. Once the principal-agent relationship is established, a third party satisfies its

---

[18] In her testimony, found in SUPP. RR at p. 12, Swain acknowledged that 100 percent of the payments being sent to Peachtree during the term of the transaction was acceptable to her. She also signed the Final Order, approving it as to form and substance. (CR 95).

obligations to the principal (for example payment obligations) by dealing with the agent. In this case, when MetLife makes the Term Payments, to Peachtree, as Swain's designated and court appointed payment agent, MetLife will satisfy its contractual and legal obligations to Swain.

By making the Swain Retained Payments to Peachtree, MetLife is making the payments to Swain. Even if the legal authorities cited by MetLife relating to courts not having the authority to rewrite and modify the terms of a parties contract were applicable (and they are not), no modification occurred because, as a matter of law, by complying with the Final Order, MetLife would still be making the Swain Retained Payments to Swain.

Unlike most principal-agent relationships, the relationship here was acknowledged in open court and confirmed by a court order, which provides the parties further protections. Not only does Peachtree now have a fiduciary obligation to Swain, as her agent, but it is subject to being held in contempt of court for failing to comply with its court-ordered obligations relating to the unassigned, serviced payments. MetLife will, without question, satisfy and comply with its payment obligations to Swain (relating to the Swain Retained Payments) by remitting said payments to Peachtree as Swain's payment agent. Legally, MetLife making the Swain Retained Payments to Peachtree pursuant to the Servicing Arrangement and Final Order is the same as MetLife making said payments directly to Swain.

While it was unnecessary for the creation of a legally binding principal-agent relationship, the fact that the Servicing Arrangement and the principal-agency relationship between Swain and Peachtree was acknowledged and confirmed in open court and in the Final Order further protects MetLife and dispels the myths of potential future liability and risk to MetLife perpetuated by MetLife, not in an effort to be protected from said liabilities, but rather to support its efforts to obstruct the Swain-Peachtree Transfer.

What is also abundantly clear, is that the creation of the principal-agent relationship between Swain and Peachtree relative to the Servicing Arrangement does not require the consent of MetLife. MetLife is only slightly, and certainly not materially, impacted by the payment agent relationship embodied in the Servicing Arrangement and despite its hollow protestations to the contrary, MetLife may legally rely on said relationship in making future payments. Texas law is unequivocal in that the creation of the principal-agent relationship between Peachtree and Swain requires the consent of the principal (Swain) and a meeting of the minds of the principal and agent, but approval of third parties is not required. Nothing in the Texas Transfer Statute or the underlying structured settlement documents changed this.

Once the principal-agent relationship between Swain and Peachtree was created (and confirmed by the trial court), MetLife could legally and properly,

without fear of legal liability or repercussions, deliver the Swain Retained Payments to Peachtree, and as a matter of law, it was just as if MetLife was making said payments directly to Swain.

The Servicing Arrangement was proper under Texas principal-agency law, the confirmation of said relationship and the Servicing Arrangement by the trial court did not constitute an improper, unilateral "modification" or "rewrite" of the underlying contracts, and MetLife is not empowered to defeat the creation of such principal-agent relationship by withholding their consent to same. The fact that the Servicing Arrangement and principal-agent relationship was in furtherance of a transaction permitted by a Texas statute and confirmed in a court order only further enhances the propriety and legality of the arrangement.

### E. The Final Order (including the Servicing Arrangement) does not contravene the Texas Transfer Statute, either directly or indirectly.

MetLife seeks to transform the Texas Transfer Statute provision providing that an issuer/obligor may not be required to divide payments amongst payee and a transferee or amongst multiple transferees into an unwritten, implied prohibition against the use of a servicing arrangement and a rejection of well-settled principal-agency law. It is axiomatic, that the Servicing Arrangement does NOT require MetLife to split or divide any payments in contravention of the Texas Transfer Statute. It is ludicrous to suggest otherwise and MetLife's arguments to the contrary delve into the realm of the absurd.

Pursuant to the Final Order MetLife makes 100% of the Term Payments to Peachtree. The fact that Peachtree receives a portion of the Term Payments (the Peachtree Assigned Payments) as an assignee and a portion (the Swain Retained Payments) as Swain's payment agent, does not alter the fact that MetLife is not dividing payments. The Final Order confirms as much.[19]

Peachtree acknowledges that the Texas Transfer Statute provides that an issuer/obligor may not be required to divide payments amongst a payee and a transferees/assignee in connection with a transfer. TEX. CIV. PRAC. & REM. CODE § 141.005(4). That provision is the genesis of the Servicing Arrangement.

Knowing the Servicing Arrangement does not actually require it to divide payments, MetLife argues that Peachtree has attempted to use the Servicing Arrangement in an improper effort to "circumvent" the Texas Transfer Statute. That is not accurate.

The fact that the Texas Transfer Statute does not expressly authorize or mention a servicing arrangement, does not mean that a servicing arrangement is not a legal, efficient, and effective method for completing a transfer where a payee seeks to transfer partial payments and the obligor/issuer declines to divide payments. There was no attempt to circumvent the Texas Transfer Statute by Peachtree or

---

[19] The trial court expressly found and ordered that MetLife was not and would not in the future be required to divide structured settlement payments. (CR 91, 93).

Swain, and the trial court did not act contrary to the Texas Transfer Statute in signing the Final Order and approving the Servicing Arrangement.

Most issuers/obligors voluntarily agree to split payments in connection with a court-approved transfer. If they do, then a servicing arrangement is unnecessary. But if they do not wish to divide payments, a court-approved transfer of structured settlement payments, coupled with a servicing arrangement included in the final order, is a standard, accepted, and fairly routine process employed in the industry in order to allow a payee to transfer and assign partial payments, and accommodate an obligor/issuer's decision to decline to divide payments. Servicing arrangements do not materially burden or prejudice issuers/obligors, are always acknowledged and agreed to by the parties directly impacted, and are court approved. There is nothing improper with a servicing arrangement in general or the particular one included in the Final Order in this case.

### F. The Servicing Arrangement did not impose upon MetLife a contractual or business relationship with Peachtree.

MetLife argues that by approving the "Servicing Arrangement" the trial court improperly forced MetLife into a non-consensual contractual and business relationship with Peachtree. At no time has Peachtree suggested or argued that the Final Order creates such a relationship.

The Texas Legislature has granted Texas courts jurisdiction and the legal authority and responsibilities to consider, approve and/or deny proposed transfers of

structured settlement payment rights when such transactions are presented through the filing of an application under the Texas Transfer Statute. TEX. CIV. PRAC. & REM. CODE §§ 141.004, 141.006. Courts accomplish this task by rendering a "final court order." TEX. CIV. PRAC. & REM. CODE § 141.004. Texas courts have the inherent authority, and responsibility, to make rulings and findings and enter orders/judgments to effect the approval (or denial) of such transfers. *See* TEX. CIV. PRAC. & REM. CODE § 141.004. The Texas Transfer Statute effectively becomes a nullity if a Texas court does not have the authority to order a structured settlement obligor and/or annuity issuer to pay and remit to a transferee or an assignee structured settlement payments that are the subject of an application and transfer.[20]

The Final Order includes language directing the issuer/obligor to make payments to Peachtree. (CR 92).[21] All transfer orders include similar language. The numerous court orders included in the appendix filed in the trial court along with Peachtree's Response includes orders where MetLife has been directed to make payments pursuant to a servicing arrangement and where MetLife has voluntarily

---

[20] TEX. CIV. PRAC. & REM. CODE § 141.004 provides "no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee . . . unless the transfer has been approved . . . in a final court order . . . " Peachtree maintains that this provision allows courts to order issuers/obligors to make payments to someone other than the original payee. At the very least, that authority is implicit in the statute.

[21] "It is further ordered that the furtherance of the Court's order granting the Application and approving the proposed transfer described herein, Metropolitan Life Insurance Company and Metropolitan Insurance and Annuity Company, are hereby authorized and directed to pay and remit to Peachtree (as Ms. Swain's designated and authorized payment agent for purpose of receiving the Term Payments . . . )".

divided payments.

Even were it not included in § 141.004, the authority of a court to direct obligors/issuers to make payments to a transferee would be inherent and ancillary to the authority granted Texas Courts to review and approve transfers. Seemingly, MetLife does not challenge the authority of the trial court to render such orders in the context of rendering a judgment (or final order) approving a transfer of structured settlement payment rights under the Texas Transfer Statute, but does raise the point in the context of the Servicing Arrangement.

The trial court's approval of the Servicing Arrangement was in furtherance of its approval of the proposed transfer of partial monthly payments by Swain to Peachtree. The Servicing Arrangement was agreed to by Swain and Peachtree and was approved by the trial court in order to (i) comply with the Texas Transfer Statute (by not forcing MetLife to split payments); and (ii) facilitate the court's order approving the transfer of partial monthly payments by Swain. MetLife endeavors to shift the argument, contending that the inclusion of the Servicing Arrangement impermissibly creates and imposes a non-consensual contractual or business relationship between MetLife and Peachtree.

In furtherance of that effort, MetLife has cited to authorities that provide that a court may not create or impose a new contract between private parties, but those legal principles, just like the arguments relating to specific performance and

mandatory injunctions raised elsewhere in Appellants' Brief, are inapplicable. Texas courts do not impermissibly create contractual or business relationships between parties when entering a child support withholding order, or a garnishment or turnover order. Those order simply allow courts to implement the statutes and policies of the State. The same is true with the Texas Transfer Statute.

MetLife complains that the trial court created rights and obligations amongst "former strangers" and that if a problem arises, the parties will not be able to rely on a written agreement. The Texas Transfer Statute and the detailed provisions of the Final Order control the arrangement. MetLife has one obligation under the Final Order—deliver the Term Payments to Peachtree, which is no different than its current obligation except that the name on the check is changed. MetLife also complains that the arrangement has the "indicia" of a contractual relationship because MetLife is required to perform certain duties. Yet, it is not required to do anything more than what it is already doing—making payments. The Final Order directs MetLife to make the Term Payments to Peachtree and the Final Order and the Texas Transfer Statute control the rights, obligations and potential liabilities between said parties. (And MetLife is fully protected and indemnified, by statute, for complying with the Final Order.) No new business or contractual relationship has been created.

Texas courts have recognized that where a party's obligation to make

payments to another party is court-ordered, there is no contract nor any claim for anticipatory breach of contract when the party fails to make such payments. *Walker v. Walker,* 619 S.W.2d 196, 199 (Tex. Civ. App.—Tyler 1981, writ ref'd n.r.e.) (Wife sued for "anticipatory breach of contract" for ex-husband's failure to make monthly payments required under divorce decree, seeking to have the remaining, unmatured payments accelerated. The court held that the ex-husband's payment obligation was based on the divorce decree and "not founded upon any contractual agreement."); *see also Astie v. Aubrey, Inc.,* 1999 Tex. App. Lexis 3838 (Tex. App.—Amarillo 1999, no pet.) (not designated for publication) (Agreed temporary injunction order was not a contract between the parties).

### G. The Final Order and Servicing Arrangement did not create new or material burdens or risks for MetLife. The alleged bankruptcy risk is remote and immaterial.

Servicing arrangements are not prohibited by and are consistent with the Texas Transfer Statute and Texas law of principal-agent. The Servicing Arrangement in this case does not burden, bias, or prejudice MetLife. There is no material change in the duties or obligations of MetLife to make the monthly payments in question. There is no material increase in the burden or risk to MetLife if the Final Order stands. In fact, the risk is less, in light of the statutory protections and indemnities imposed when an issuer/obligor, like MetLife, is directed to make payments pursuant to a Final Order issued under the Texas Transfer Statute.

MetLife desperately argued that it will somehow be harmed or subjected to additional risks if the Final Order stands. Yet, the "risks" to which MetLife cites are contrived, speculative, and fanciful. Moreover, MetLife presented no evidence in the trial court to support its contention that a court-sanctioned servicing arrangement actually creates substantial administrative burdens and expenses and subjects MetLife to undue risks. All that MetLife offered was speculation, argument, and conjecture. MetLife offered no evidence, because there is none.

Before the Final Order was signed, MetLife was making monthly structured settlement/annuity payments in the amount of $1,643.24 per month to Swain. After the Final Order was signed, MetLife was to remit those same payments to Peachtree. The amount and timing of the payments has not been altered or changed and MetLife's payment obligations remain the same.

MetLife received everything it bargained for in the underlying structured settlement. Metropolitan Annuity received money from the Settling Parties in return for agreeing to make the future Settlement Payments it qualified for tax benefits. Metropolitan Life sold an annuity to fund the payment obligations of Metropolitan Annuity. The money and tax benefits received by and bestowed on MetLife are not in peril. *See* 26 U.S.C. § 5891. The defendants in the underlying lawsuit were released and that release is final and irrevocable. Swain is not required to provide MetLife anything or otherwise "perform" under the original structured settlement;

she was simply required to release her claims against the settling defendants and she did so, thus there is <u>no risk</u> of MetLife not obtaining any return performance from Swain by virtue of the Final Order.

MetLife argues that it "may" be served with a garnishment, bankruptcy, or child support order seeking to attach Swain's structured settlement payments and therefore those possible events require denial of the transfer. However, those risks are present now and the Servicing Arrangement of which MetLife complains does not exacerbate or increase those remote risks. In fact, the Final Order likely decreases, or at least mitigates those risks.

Now, post Final Order, when MetLife is presented with a garnishment, bankruptcy, or child support order, MetLife should refer the party delivering said order to the Final Order and Peachtree, who would deal with the situation. MetLife could not oppose a garnishment based on a claim that doing so improperly imposes a non-consensual business or contractual relationship on it with the garnishor. It could not oppose a child support order based on a claimed administrative burden or speculative, potential double liability or because the underlying final judgment approving the structured settlement provides that payments are to be made to Swain and Swain only. Such arguments would get it nowhere in those proceedings, and should not in this case.

In the unlikely event that a garnishment/child support/bankruptcy order was

not addressed to MetLife's satisfaction, it could file (and has in the past filed) an interpleader and join all of the parties making claims to the payments at issue and remit the payments to the interpleader court. In an interpleader action, MetLife would not only be discharged quickly, it could also recover attorneys' fees.

MetLife suggests that if Peachtree were to file bankruptcy all manner of speculative mischief and misfortune might occur that would be burdensome, costly, and distracting to MetLife. That contention is simply a product of MetLife's imagination. Peachtree is a part of a publicly traded company. The company is solvent and stable. Peachtree is currently servicing millions of dollars of payments to investors on a monthly basis, relative to securitizations and other financing transactions. It services payments to payees, like Swain, in transactions involving court-approved servicing arrangements all over the country. It has procedures, policies, and processes to service payments to its customers and is experienced in doing so. It also has retained independent, institutional back-up servicers who will assume servicing obligations in the unlikely event of a servicing failure by Peachtree. When J.G. Wentworth went through a pre-packaged bankruptcy during the financial crisis, not a single services payment went awry.

## H. Swain is Not Hindered by the Servicing Arrangement in Transferring Additional Payments.

MetLife suggests that if Swain decides to later sell the unassigned (serviced) portion of Swain's monthly payment to another company, that could result in

litigation whereby someone might challenge the Servicing Arrangement. There is no indication that Swain will in the future seek to transfer and assign the remainder of her monthly payment to another transferee. That is speculation. If, however, that occurs, the issue of whether Peachtree will service payments to the funding company acquiring the unassigned, serviced payments in a separate court-approved transaction, will be addressed in the subsequent transfer action and, in light of the Final Order, will not involve MetLife. Furthermore, that issue was recently resolved by this very Court in two cases where J.G. Wentworth Originations, LLC was required, pursuant to a court-approved servicing arrangement, to service payments to a third-party purchaser (a competitor of J.G. Wentworth's). *Freelon*; *Perez*.

The *Freelon* and *Perez* cases, in addition to resolving the subsequent servicing question raised by MetLife, are instructive on other issues in this case. In both of those cases, this Court addressed underlying servicing arrangements approved in transfer orders rendered by multiple courts in Harris County (*Freelon)* and Fort Bend County (*Perez)*. The prior court orders directed Wentworth to make unassigned payments that were subject to a servicing arrangement to the payee, and this Court rejected Wentworth's contention that a court order rendered by a different court in a subsequent transfer proceeding which directed Wentworth to make payments to someone other than the payee contravened the prior court order. *Freelon,* 446 S.W. 3d at 433); *Perez,* 2014 Tex. App. Lexis at 13-14). This Court sanctioned the use of

servicing arrangements, including servicing arrangements that would require the servicer to make payments not only to a payee, but to a payee's subsequent court-approved assignee. That situation not only did not contravene the prior court orders, but also did not violate the Texas Transfer Statute and this Court noted that the statute "appears to anticipate that payees may later transfer additional payments" to a different transferee, after they initially transferred partial payments and agreed to a servicing arrangement. *Freelon,* 446 S.W. 3d at 433. If MetLife's position is adopted, payees will not be able to transfer partial payments to different transferees or employ servicing arrangements to facilitate such.

MetLife has strained to come up with every speculative, contrived situation that could possibly arise that might result in some sort of burden to, or issue for, MetLife, notwithstanding the fact that MetLife's only obligation is to remit the Term Payments to Peachtree. It is extremely unlikely that any of the potential scenarios raised by MetLife would actually occur. If they do, they will have to be dealt with regardless of whether there is a Servicing Arrangement or not. The most likely scenario is that MetLife will send the monthly payments to Peachtree each month, Peachtree will retain the assigned portions of same, and will remit the remainder to Swain and that will continue until the end of the 132-month period set forth in the

Final Order.[22]

MetLife argues, unconvincingly, that if the Final Order stands, MetLife will continue to be subject to liability. In doing so, MetLife ignores the fact that Peachtree and Swain have released it from any liability for making the Term Payments to Peachtree in accordance with the Final Order and that the trial court has directed MetLife to make the Term Payments to Peachtree. It is inconceivable that MetLife could be held liable for complying with a court order, especially when the party to whom they claim they could be subject to potential liability (Swain) was a party to and approved said order, and released MetLife for complying with same.

MetLife's arguments regarding the speculative burdens that might conceivably be visited upon it by the Servicing Arrangement conveniently also the fact that the Texas Transfer Statute provides obligors/issuers protection against such burdens and potential liabilities. Section 141.005 provides, in relevant part, that "following a transfer of structured settlement payment rights under this chapter: (1) the structured settlement obligor and the annuity issuer shall, as to all parties except

_____

[22] Despite unsuccessfully objecting to payee's attempts to transfer and assign partial payments in a number of cases, where MetLife refuses to divide payments or cooperate in a servicing arrangement, resulting in numerous Texas courts signing order approved servicing arrangements over MetLife's objection, MetLife chooses not honor these court orders. Instead, MetLife divides the payments amongst payees and transferees. In this case, MetLife has been dividing the Term Payments amongst Swain and Peachtree since the Final Order. Peachtree tolerates MetLife's decision to disregard the court orders, further rebutting MetLife's contention that Peachtree tries to force itself into the role of servicer. Additionally, all of the contrived potential liabilities of MetLife evaporate. It is important to note that MetLife chooses to divide these payment, it is not ordered to do so.

the transferee, be discharged and released from any and all liability for the transferred payments." Tex. Civ. Prac. & Rem. Code § 141.005(1) (emphasis added). While subsection (1) applies to the payments actually transferred and assigned, subsection (2) is broader and provides that (again following a transfer) the transferee (Peachtree) <u>shall</u> be liable to the structured settlement obligor (Metropolitan Annuity) and the annuity issuer (Metropolitan Life) for "any other liabilities and costs, including reasonable costs and attorneys' fees, arising from <u>compliance by the parties with the order</u> of the court or arising as a consequence of the transferee's failure to comply with this chapter." Tex. Civ. Prac. & Rem. Code § 141.005(2)(B) (emphasis added).

In approving the Swain-Peachtree Transfer, the trial court signed the Final Order, approved the ancillary Servicing Arrangement, and directed MetLife to make the Term Payments to Peachtree (which included the Peachtree Assigned Payments to be retained by Peachtree and the Swain Retained Payments to be remitted by Peachtree to Swain). (CR 89-95). Should MetLife incur any liability or costs for complying with the Final Order, it has a statutory <u>and</u> court-ordered right to recover from Peachtree.

There simply was no <u>evidence presented</u> to the trial court which established or even suggested that MetLife will be unduly (or even slightly) burdened, distracted, or prejudiced by the Servicing Arrangement, and they will not be, and

should it incur any liability or costs as a result of complying with the Final Order, those costs are Peachtree's responsibility.

### I. The Final Order and Servicing Arrangement do not contravene the Wisconsin Order.

MetLife next argues that the Final Order contravenes the terms of the Wisconsin Order, which order provided for payments to be made to Swain. Here MetLife's argument rests on the weakest of grounds. MetLife is not even a party to the Wisconsin Order and is reduced to arguing that because that order states that the Settlement Payments are payable to Swain, any order, agreement, statute, or document that provides for payment to any party other than Swain is in contravention of the Wisconsin Order and therefore prohibited.

MetLife is well aware that structured settlement documents, whether court orders or settlement agreements, generally provide that payments will be made to a specific payee (here, Swain). That is a necessity. The Texas Transfer Statute creates a mechanism for payees to transfer "structured settlement payment rights," when such transfers are court-approved and otherwise complies with the Texas Transfer Statute. "Structured settlement payment rights" is defined as rights to receive periodic payments under a structured settlement. TEX. CIV. PRAC. & REM. CODE § 141.002(16). Structured settlement is defined as "an arrangement for periodic payment . . . established by a settlement or judgment in resolution of tort claim." TEX. CIV. PRAC. & REM. CODE § 141.002(13) (emphasis added). Thus, the Texas

Transfer Statute contemplates that structured settlement payments arising under a judgment could be transferred and such payments may also be subject to a payment agent arrangement.

Additionally, judgments are freely assignable under Texas and Wisconsin law. TEX. PROP. CODE § 12.014(a); WIS. STAT. § 806.18; *see also* TEX. JUR. JUDGMENTS § 623; *First National Bank v. Roberts,* 286 S.W.2d 462, 464 (Tex. App.—Austin 1956, no writ); *McMillan v. Rutherford,* 14 S.W.2d 132 (Tex. Civ. App.—Amarillo 1929, no writ). It is permissible to transfer only an interest in a judgment. *Madison & Pennings, Inc. v. Foundation Engineering Co.,* 390 S.W. 2d 48, 50 (Tex. App.—Houston [1st Dist.], 1965 no writ).

Just like in the *Freelon* and *Perez* matters, the fact that the Final Order directs MetLife to make payments to someone other than to the original payee identified in the Wisconsin Order (and other structured settlement documents) does not mean that the Final Order contravenes those documents. The transaction is completed pursuant to a comprehensive statutory scheme and court order and an immaterial change in the identity of the party receiving the payments by virtue of said court order is not improper.

If an insurance company such as MetLife could use this argument to prohibit transfers, there would be no transfers and no need for the Texas Transfer Statute. This specious argument would swallow the Texas Transfer Statute and every other

statute and render them impotent.

The language in the Wisconsin Order which necessarily states that Swain is entitled to receive the Settlement Payments does not mean that the Final Order contravenes the Wisconsin Order. Even if it did, the Texas Transfer Statute expressly contemplates that a court may approve a transfer even if such transfer contravenes contractual provisions of the settlement documents and in such event provides protection to the structured settlement obligor and annuity issuer (here, Metropolitan Annuity and Metropolitan Life).

Section 141.005 of the Texas Transfer Statute provides, in relevant part, that "if the transfer contravenes the terms of the structured settlement," the transferee (here, Peachtree) shall be liable to both the structured settlement obligor (Metropolitan Annuity) and the annuity issuer (Metropolitan Life) for any taxes incurred as a result of the transfer, as well as any other liabilities or costs, including attorneys' fees, arising from compliance with a court order pursuant to the Texas Transfer Statute. TEX. CIV. PRAC. & REM. CODE § 141.005 (emphasis added). The Texas Legislature has acknowledged and expressly contemplated that a transfer under the Texas Transfer Statute may be approved by a court even though it contravenes the settlement documents.

### J. The trial court did not abuse its discretion in approving the Swain-Peachtree Transfer

MetLife next argues that the trial court abused its discretion in finding that the

transfer was in Swain's best interest, considering the welfare and support of her dependents. (CR 91). Judge Ward had the advantage of two hearings separated by 60 days. Swain and counsel for MetLIfe and Peachtree participated in both hearings. Although Swain's testimony appeared on the record only at the second hearing, she discussed her reasons for wanting to complete the transaction at both. Counsel for MetLife had the opportunity to cross-examine Swain. Judge Ward had the opportunity to see and question Swain and evaluate her intelligence, sincerity, and truthfulness. He made the best interest determination and that decision should not be disturbed so that MetLife may achieve its objective of exerting its control over the transaction. It should be noted that MetLife would never have opposed the proposed transaction on best interest grounds, had Swain decided to liquidate 100% of her future payments.

Abuse of discretion is a high bar and one MetLife cannot possibly meet in this case. In conducting its factual sufficiency review, the court of appeals must consider and weigh all of the evidence, and can set aside the decision of the fact finder only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) *citing Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). The court of appeals is obligated to review the evidence but may not reverse simply because it feels that the evidence preponderates

toward an answer that differs from that of the trial court fact finder. *Salinas v. Allen*, 366 S.W.3d 842, 844 (Tex. App.—Amarillo 2012, no pet.) *citing Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988). The court of appeals may not substitute its judgment for that of the fact finder. *Salinas*, 366 S.W.3d at 844 *citing Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

It was apparent to anyone in attendance at the hearings that Swain had carefully considered her financial needs and structured the transaction in a manner that gave her comfort and security by deciding to transfer only a portion of her monthly payments for a limited period of time, specifically retaining the right to receive at least $1,197.54 per month (increasing 3% annually) from the monthly payments. (SUPP. RR at p. 11).

When she testified Swain was 29 years old and lived as a family with her boyfriend, William, and an 18-month-old daughter. (SUPP. RR at pp. 6, 7, 10). However, they were living in a house with relatives, who had eight children and they needed a home of their own. (SUPP. RR at p. 10). Swain's educational background includes finishing high school and some college. (SUPP. RR at p. 7). Both Swain and her boyfriend work. (SUPP. RR at p. 7, lines 2-17). Swain earns about $700.00 per week, after taxes, from her job at Brenner's Steakhouse. (SUPP. RR at p. 7, lines 2-11). Although William's income does not appear in the record, Swain confirmed that he was self-employed as a contractor. (SUPP. RR at p. 7, lines 12-17).

Swain testified that she intended to use the proceeds of the transaction to repay her Grandfather $9,000.00 that he had lent her to purchase a car and would use the rest to put a down payment on a home for her family in Katy. (SUPP. RR at pp. 9-10). Swain secured offers from other companies and she consulted with her Grandfather regarding the transaction, who has run an accounting business in Wisconsin for over 20 years. (SUPP. RR at pp. 10-11, 13). She confirmed, on cross-examination, that her Grandfather was her financial advisor. (SUPP. RR at 11-13).

Swain also confirmed at the second hearing that she was closing on her home purchase that same week. (SUPP. RR at p. 10, lines 3-8). Swain continues to receive substantial monthly payments from her structured settlement. The discount rate used to calculate the Purchase Price was 7.822%. (RR Ex. 2). At the conclusion of the Swain-Peachtree Transfer in 2026, when Swain will be 41 years old, she will again be entitled to receive the full amount of the monthly payments, which by that time will be around $2,274 per month. (RR. Ex. 1).

MetLife's counsel cross-examined Swain and the only issue he addressed with her was the amount of money that Peachtree was going to make off the transaction and the rate of the deal. (SUPP. RR at pp. 13-14).

Prior to the Rains Case (which had not been decided at the time of the Final Order) there was little guidance from Texas case law relative to a best interest determination. A Minnesota appellate court, in reviewing a structured settlement

transfer under that state's transfer statute, said that the "best interest determination" involves a global consideration of the facts, circumstances, and means of support available to the payee and his or her dependents. *Settlement Capital Corporation et al. v. State Farm Mutual Automobile Insurance Company et al,* 646 N.W.2d 550, 556 (Minn Ct. App. 2002). These considerations include, among other case specific factors, the reasonable preference of the payee, in light of the payee's age, mental capacity, maturity level, and stated purpose for the transfer. *Id.* The court should inquire whether the payee has means of support aside from the structured settlement payments to be transferred and whether the payee can meet his financial obligations to his dependents. *Id.* The Minnesota court noted that the payee, Ms. Lundgren, was 21 years old, had no cognitive disabilities, was married and had two children; she and her spouse were employed and wanted to put a down payment on a home; and she understood the terms of the transfer and the discount rate used to determine the purchase price. *Id.* The Minnesota court concluded that there had been a sufficient showing that the transfer was in Lundgren's best interest. *Id.*

Applying the factors from the *Settlement Capital* case to this case, leads easily to the conclusion that Peachtree and Swain offered significant and certainly sufficient evidence to support the trial court's decision that the transfer was in Swain's best interest. Even under the more onerous factors promulgated for the first time in the Rains Case, the trial Judge's best interest determination stands up well

and is not "clearly wrong or unjust."  There was no abuse of discretion here.

## PRAYER

Peachtree Settlement Funding, LLC requests that the Final Order be affirmed.

NESBITT, VASSAR & McCOWN, L.L.P.

/s/ Earl S. Nesbitt
Earl S. Nesbitt
State Bar No. 14916900
enesbitt@nvmlaw.com
David S. Vassar
State Bar No. 20503175
dvassar@nvmlaw.com
Patrick P. Sicotte
State Bar. No. 24079330
psicotte@nvmlaw.com
15851 Dallas Parkway, Suite 800
Addison, Texas  75001
Telephone:  (972) 371-2411
Telecopier: (972) 371-2410

## CERTIFICATE OF COMPLIANCE

Pursuant to TEX. R. APP. P. 9, I hereby certify that, according to the word count of the word-processing program used to draft the Brief of Appellee Peachtree Settlement Funding, LLC, the portion of the foregoing Brief subject to the word limit imposed by TEX. R. APP. P. 9 contains 14,996 words.

/s/ Earl S. Nesbitt
Earl S. Nesbitt

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing Brief of Appellee Peachtree Settlement Funding, LLC was served upon the following counsel of record/interested parties on this 26th day of October, 2014:

Via E-Mail
and Certified Mail
Patrick B. Larkin
Larkin Law Firm
11200 Broadway Street, Suite 2705
Pearland, Texas 77584

Via E-Mail
and Certified Mail
Andrew J. Lorin
Stephen R. Harris
Patrick M. Harrington
Drinker Biddle & Reath LLC
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103

Via Regular Mail
Sara Swain
544 HCR 2122 West
Aquilla, Texas 76622

/s/ Earl S. Nesbitt
Earl S. Nesbitt

# APPENDIX OF APPELLEE PEACHTREE SETTLEMENT FUNDING, LLC

| DOCUMENT | TAB/PAGES |
|---|---|
| Flow Chart of Peachtree/Swain Transaction | Tab 1/pp. 3-8 |
| TEX. CIV. PRAC. & REM. CODE §§ 141.001 *et. seq.* | Tab 2/pp. 9-18 |
| TEX. PROP. CODE § 12.014 | Tab 3/pp. 19-20 |

***In re: S. Swain*, In the 234th Judicial District Court of Harris County, Texas; Cause No. 201474548**

| | |
|---|---|
| Final Order Approving Transfer of Structured Settlement Payment Rights | Tab 4/pp. 21-28 |
| Order Confirming and Reaffirming Final Order Approving Transfer of Structured Settlement Payment Rights | Tab 5/pp. 29-32 |

***In re: J. Rains, Annuitant*, In the 66th Judicial District Court of Hill County, Texas; Cause No. 51350**

| | |
|---|---|
| Final Order Approving Transfer of Structured Settlement Payment Rights | Tab 6/pp. 33-37 |

***Metropolitan Life Insurance Company and Metropolitan Insurance & Annuity Company*, In the Court of Appeals for the Seventh District of Texas at Amarillo; Cause No. 07-14-00132-CV**

| | |
|---|---|
| Table of Contents from Brief of Appellants | Tab 7/pp. 38-41 |

***In re J. Galvan, Annuitant,* In the County Court at Law of Kleberg County, Texas; Cause No. 14-231-C**

| | |
|---|---|
| Final Order Approving Transfer of Structured Settlement Payment Rights | Tab 8/pp. 42-48 |

| DOCUMENT | TAB/PAGES |
|----------|-----------|

*In re J. Galvan, Annuitant*, **In the Court of Appeals for the Thirteenth District of Texas at Corpus Christi; Cause No. 13-14-00463-CV**

Memorandum Opinion (Dismissing Appeal)    Tab 9/pp. 49-51

*In re T. Klemer, Annuitant*, **In the County Court at Law of Hood County, Texas; Cause No. CO6666**

Final Order Approving Transfer of    Tab 10/pp. 52-58
Structured Settlement Payment Rights

*Metropolitan Life Insurance Company and Metropolitan Reinsurance Company v. T. Klemer and J.G. Wentworth Originations*, **In the Court of Appeals for the Second District of Texas at Fort Worth; Cause No. 02-14-00151-CV**

Memorandum Opinion (Dismissing Appeal)    Tab 11/pp. 59-61

*In re: Michael Cortez*, **in the County Court at Law No. 3 of Brazoria County, Texas; Cause No. CI52847**

Final Order Approving Transfer of Partial    Tab 12/pp. 62-68
Structured Settlement Payment Rights

*In re: Esperanza Hughes*, **In the 79th Judicial District Court of Jim Wells County, Texas; Cause No. 15-03-54382-CV**

Final Order Approving Transfer of Partial    Tab 13/pp. 69-77
Structured Settlement Payment Rights

*In re: Bradley Turpin*, **In the County Court at Law No. 2 of Galveston County, Texas; Cause No. CV-0073918**

Final Order Approving Transfer of    Tab 14/pp. 78-86
Structured Settlement Payment Rights

# TAB 1



( Promise to Pay $ )

Sara Swain — Lawsuit Settlement Agreement — Settling Parties

( Release )







( Promise to Pay $ )

Sara Swain

Lawsuit
Settlement Agreement

Settling Parties

( Release )

( Obligation to make future settlement payments )

Qualified Assignment

(Right to Partial Monthly Payments)

Transfer Agreement and Court Order

Payments

Metropolitan Insurance & Annuity Company

Peachtree Settlement Funding

( issued to fund payment obligations )

Annuity

Metropolitan Life Insurance Company

( Promise to Pay $ )



# TAB 2

1 of 7 DOCUMENTS

LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

*** This document is current through the 2013 3rd Called Session ***

CIVIL PRACTICE AND REMEDIES CODE
TITLE 6.  MISCELLANEOUS PROVISIONS
CHAPTER 141.  STRUCTURED SETTLEMENT PROTECTION ACT

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

*Tex. Civ. Prac. & Rem. Code § 141.001*  (2014)

§ 141.001.  Short Title

  This chapter may be cited as the Structured Settlement Protection Act.

2 of 7 DOCUMENTS

LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

*** This document is current through the 2013 3rd Called Session ***

CIVIL PRACTICE AND REMEDIES CODE
TITLE 6.  MISCELLANEOUS PROVISIONS
CHAPTER 141.  STRUCTURED SETTLEMENT PROTECTION ACT

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

*Tex. Civ. Prac. & Rem. Code § 141.002*  (2014)

§ 141.002.  Definitions

  In this chapter:

    (1) "Annuity issuer" means an insurer that has issued a contract to fund periodic payments under a structured settlement.

    (2) "Court" means:

      (A) the court of original jurisdiction that authorized or approved a structured settlement; or

      (B) if the court that authorized or approved the structured settlement no longer has jurisdiction to approve a transfer of payment rights under the structured settlement under this chapter, a statutory county court, a statutory probate court, or a district court located in the county in which the payee resides.

    (3) "Dependents" includes a payee's spouse, minor children, and all other persons for whom the payee is legally obligated to provide support, including alimony.

    (4) "Discounted present value" means the present value of future payments determined by discounting the payments to the present using the most recently published Applicable Federal Rate for determining the present value of an annuity, as issued by the United States Internal Revenue Service.

    (5) "Gross advance amount" means the sum payable to the payee or for the payee's account as consideration for a transfer of structured settlement payment rights before any reductions for transfer expenses or other deductions to be made from the consideration.

    (6) "Independent professional advice" means advice of an attorney, certified public accountant, actuary, or other licensed professional adviser.

    (7) "Interested party" means, with respect to any structured settlement:

      (A) the payee;

      (B) any beneficiary irrevocably designated under the annuity contract to receive payments following the payee's

**APPENDIX OF APPELLEE PEACHTREE SETTLEMENT FUNDING, LLC -- PAGE 11**

death;

(C) the annuity issuer;

(D) the structured settlement obligor; and

(E) any other party that has continuing rights or obligations under the structured settlement.

(8) "Net advance amount" means the gross advance amount less the aggregate amount of the actual and estimated transfer expenses required to be disclosed under Section 141.003(5).

(9) "Payee" means an individual who is receiving tax-free payments under a structured settlement and proposes to transfer payment rights under the structured settlement.

(10) "Periodic payments" includes both recurring payments and scheduled future lump-sum payments.

(11) "Qualified assignment agreement" means an agreement providing for a qualified assignment within the meaning of Section 130, Internal Revenue Code of 1986 *(26 U.S.C. Section 130),* as amended.

(12) "Settled claim" means the original tort claim or workers' compensation claim resolved by a structured settlement.

(13) "Structured settlement" means an arrangement for periodic payment of damages for personal injuries or sickness established by settlement or judgment in resolution of a tort claim or for periodic payments in settlement of a workers' compensation claim.

(14) "Structured settlement agreement" means the agreement, judgment, stipulation, or release embodying the terms of a structured settlement.

(15) "Structured settlement obligor" means, with respect to any structured settlement, the party that has the continuing obligation to make periodic payments to the payee under a structured settlement agreement or a qualified assignment agreement.

(16) "Structured settlement payment rights" means rights to receive periodic payments under a structured settlement, whether from the structured settlement obligor or the annuity issuer, if:

(A) the payee is domiciled in or the domicile or principal place of business of the structured settlement obligor or the annuity issuer is located in this state;

(B) the structured settlement agreement was authorized or approved by a court located in this state; or

(C) the structured settlement agreement is expressly governed by the laws of this state.

(17) "Terms of the structured settlement" include, with respect to any structured settlement, the terms of the structured settlement agreement, the annuity contract, any qualified assignment agreement, and any order or other approval of the court.

(18) "Transfer" means any sale, assignment, pledge, hypothecation, or other alienation or encumbrance of structured settlement payment rights made by a payee for consideration, except that the term does not include the creation or perfection of a security interest in structured settlement payment rights under a blanket security agreement entered into with an insured depository institution, in the absence of any action to redirect the structured settlement payments to the insured depository institution, or its agent or successor in interest, or to enforce the blanket security interest against the structured settlement payment rights.

(19) "Transfer agreement" means the agreement providing for a transfer of structured settlement payment rights.

(20) "Transfer expenses" means all the expenses of a transfer that are required under the transfer agreement to be paid by the payee or deducted from the gross advance amount, including court filing fees, attorney's fees, escrow fees, lien recording fees, judgment and lien search fees, finders' fees, commissions, and other payments to a broker or other intermediary, except that the term does not include preexisting obligations of the payee payable for the payee's account from the proceeds of a transfer.

(21) "Transferee" means a party acquiring or proposing to acquire structured settlement payment rights through a transfer.

LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

\*\*\* This document is current through the 2013 3rd Called Session \*\*\*

CIVIL PRACTICE AND REMEDIES CODE
TITLE 6.  MISCELLANEOUS PROVISIONS
CHAPTER 141.  STRUCTURED SETTLEMENT PROTECTION ACT

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

*Tex. Civ. Prac. & Rem. Code § 141.003*  (2014)

§ 141.003.  Required Disclosures to Payee

   At least three days before the date on which the payee signs a transfer agreement, the transferee shall provide to the payee a separate disclosure statement, in bold type at least 14 points in size, that states:

   (1) the amounts and due dates of the structured settlement payments to be transferred;

   (2) the aggregate amount of the payments;

   (3) the discounted present value of the payments to be transferred, which shall be identified as the "calculation of current value of the transferred structured settlement payments under federal standards for valuing annuities," and the amount of the Applicable Federal Rate used in calculating the discounted present value;

   (4) the gross advance amount;

   (5) an itemized listing of all applicable transfer expenses, other than attorney's fees and related disbursements payable in connection with the transferee's application for approval of the transfer, and the transferee's best estimate of the amount of those expenses;

   (6) the net advance amount;

   (7) the amount of any penalties or liquidated damages payable by the payee in the event of any breach of the transfer agreement by the payee; and

   (8) a statement that the payee has the right to cancel the transfer agreement, without penalty or further obligation, not later than the third business day after the date the agreement is signed by the payee.

4 of 7 DOCUMENTS

LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

*** This document is current through the 2013 3rd Called Session ***

CIVIL PRACTICE AND REMEDIES CODE
TITLE 6.  MISCELLANEOUS PROVISIONS
CHAPTER 141.  STRUCTURED SETTLEMENT PROTECTION ACT

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

*Tex. Civ. Prac. & Rem. Code § 141.004*  (2014)

§ 141.004.  Approval of Transfers of Structured Settlement Payment Rights

   No direct or indirect transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee of structured settlement payment rights unless the transfer has been approved in advance in a final court order based on express findings by the court that:

        (1) the transfer is in the best interest of the payee, taking into account the welfare and support of the payee's dependents;

        (2) the payee has been advised in writing by the transferee to seek independent professional advice regarding the transfer and has either received the advice or knowingly waived the advice in writing; and

        (3) the transfer does not contravene any applicable statute or an order of any court or other governmental authority.

LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

*** This document is current through the 2013 3rd Called Session ***

CIVIL PRACTICE AND REMEDIES CODE
TITLE 6.  MISCELLANEOUS PROVISIONS
CHAPTER 141.  STRUCTURED SETTLEMENT PROTECTION ACT

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

*Tex. Civ. Prac. & Rem. Code § 141.005*  (2014)

§ 141.005.  Effects of Transfer of Structured Settlement Payment Rights

Following a transfer of structured settlement payment rights under this chapter:

(1) the structured settlement obligor and the annuity issuer shall, as to all parties except the transferee, be discharged and released from any and all liability for the transferred payments;

(2) the transferee shall be liable to the structured settlement obligor and the annuity issuer:

(A) if the transfer contravenes the terms of the structured settlement, for any taxes incurred by the parties as a consequence of the transfer; and

(B) for any other liabilities or costs, including reasonable costs and attorney's fees, arising from compliance by the parties with the order of the court or arising as a consequence of the transferee's failure to comply with this chapter;

(3) the transferee shall be liable to the payee:

(A) if the transfer contravenes the terms of the structured settlement, for any taxes incurred by the payee as a consequence of the transfer; and

(B) for any other liabilities or costs, including reasonable costs and attorney's fees, arising as a consequence of the transferee's failure to comply with this chapter;

(4) neither the structured settlement obligor nor the annuity issuer may be required to divide any periodic payment between the payee and any transferee or assignee or between two or more transferees or assignees; and

(5) any further transfer of structured settlement payment rights by the payee may be made only after compliance with all of the requirements of this chapter.

6 of 7 DOCUMENTS

LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

*** This document is current through the 2013 3rd Called Session ***

CIVIL PRACTICE AND REMEDIES CODE
TITLE 6.  MISCELLANEOUS PROVISIONS
CHAPTER 141.  STRUCTURED SETTLEMENT PROTECTION ACT

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

*Tex. Civ. Prac. & Rem. Code § 141.006*  (2014)

§ 141.006.  Procedure for Approval of Transfers

   (a) An application under this chapter for approval of a transfer of structured settlement payment rights shall be made by the transferee and shall be brought in the court.

   (b) At least 20 days before the date of the scheduled hearing on any application for approval of a transfer of structured settlement payment rights under Section 141.004, the transferee shall file with the court and serve on all interested parties a notice of the proposed transfer and the application for authorization, including with the notice:

      (1) a copy of the transferee's application;

      (2) a copy of the transfer agreement;

      (3) a copy of the disclosure statement required under Section 141.003;

      (4) a listing of each of the payee's dependents, together with each dependent's age;

      (5) notice that any interested party is entitled to support, oppose, or otherwise respond to the transferee's application, either in person or by counsel, by submitting written comments to the court or by participating in the hearing; and

      (6) notice of the time and place of the hearing and notification of the manner in which and the time by which written responses to the application must be filed to be considered by the court.

   (c) Written responses to the application under Subsection (b)(6) must be filed on or after the 15th day after the date the transferee's notice is served.

LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

\*\*\* This document is current through the 2013 3rd Called Session \*\*\*

CIVIL PRACTICE AND REMEDIES CODE
TITLE 6.  MISCELLANEOUS PROVISIONS
CHAPTER 141.  STRUCTURED SETTLEMENT PROTECTION ACT

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

*Tex. Civ. Prac. & Rem. Code § 141.007*  (2014)

§ 141.007.  General Provisions; Construction

  (a) The provisions of this chapter may not be waived by any payee.

    (b) Any transfer agreement entered into by a payee who resides in this state must provide that disputes under the transfer agreement, including any claim that the payee has breached the agreement, shall be determined in and under the laws of this state. The transfer agreement may not authorize the transferee or any other party to confess judgment or consent to entry of judgment against the payee.

    (c) Transfer of structured settlement payment rights may not extend to any payments that are life-contingent unless, prior to the date on which the payee signs the transfer agreement, the transferee has established and agreed to maintain procedures reasonably satisfactory to the structured settlement obligor and the annuity issuer for:

      (1) periodically confirming the payee's survival; and

      (2) giving the structured settlement obligor and the annuity issuer prompt written notice in the event of the payee's death.

    (d) A payee who proposes to make a transfer of structured settlement payment rights may not incur any penalty, forfeit any application fee or other payment, or otherwise incur any liability to the proposed transferee or any assignee based on any failure of the transfer to satisfy the conditions of this chapter.

    (e) Nothing contained in this chapter may be construed to authorize any transfer of structured settlement payment rights in contravention of any law or to imply that any transfer under a transfer agreement entered into before the effective date of this chapter is valid or invalid.

    (f) Compliance with the requirements in Section 141.003 and fulfillment of the conditions in Section 141.004 are solely the responsibility of the transferee in any transfer of structured settlement payment rights, and neither the structured settlement obligor nor the annuity issuer bear any responsibility for, or any liability arising from, noncompliance with the requirements or failure to fulfill the conditions.

# TAB 3

LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

\*\*\* This document is current through the 2013 3rd Called Session \*\*\*

PROPERTY CODE
TITLE 3.  PUBLIC RECORDS
CHAPTER 12.  RECORDING OF INSTRUMENTS

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

*Tex. Prop. Code § 12.014*  (2014)

§ 12.014.  Transfer of Judgment or Cause of Action

   (a) A judgment or part of a judgment of a court of record or an interest in a cause of action on which suit has been filed may be sold, regardless of whether the judgment or cause of action is assignable in law or equity, if the transfer is in writing.

   (b) A transfer under this section may be filed with the papers of the suit if the transfer is acknowledged or sworn to in the form and manner required by law for acknowledgement or swearing of deeds.

   (c) If a transfer of a judgment is filed, the clerk shall record the transfer appropriately. If a transfer of a cause of action in which a judgment has not been rendered is filed, the clerk shall note and briefly state the substance of the transfer on the court docket at the place where the suit is entered.

   (d) A transfer filed under this section is notice to and is binding on a person subsequently dealing with the judgment or cause of action.

# TAB 4

| | | |
|---|---|---|
| IN RE: | § | IN THE DISTRICT COURT |
| | § | |
| S. SWAIN | § | HARRIS COUNTY, TEXAS |
| | § | |
| | § | 234TH JUDICIAL DISTRICT |

**Final Order Approving Transfer of**
**Structured Settlement Payment Rights**

On the 2nd day of February, 2015, this case came on for final hearing and trial and consideration by the Court of the Application for Approval of the Transfer of Structured Settlement Payment Rights (the "Application") filed by Peachtree Settlement Funding, LLC, as the transferee ("Peachtree" or "Transferee"), and Sara Swain as the payee ("Payee" or "Ms. Swain") pursuant to Chapter 141 of the Texas Civil Practice & Remedies Code (the "Texas Transfer Statute"). The Court, after due consideration of the Application, the Opposition/Objection to the proposed transfer filed by Metropolitan Insurance and Annuity Company and Metropolitan Life Insurance Company (the "MetLife Opposition"), and the other pleadings and documents on file with the Court and the evidence and testimony presented at the hearing, hereby makes the following findings:

1. This Court has subject matter jurisdiction over this proceeding and personal jurisdiction over the parties. Venue of this matter is proper in Harris County, Texas and this Court because Ms. Swain resides in Harris County, Texas. All persons/entities entitled to be served and/or provided notice of these proceedings have been served and/or provided such notice or have appeared in this proceeding directly and/or through counsel.

2. Ms. Swain is currently entitled to receive structured settlement payments from Metropolitan Insurance and Annuity Company ("Metropolitan Insurance"). Metropolitan Insurance funded its obligation to make those structured settlement payments to Ms. Swain

**FINAL ORDER APPROVING TRANSFER OF STRUCTURED**
**SETTLEMENT PAYMENT RIGHTS – Page 1 of 7**

through the issuance of an annuity (Group Annuity contract # 8281/Certificate # 74875) by Metropolitan Life Insurance Company ("Metropolitan Life").

3. Ms. Swain has one dependent, as that term is defined in the Texas Transfer Statute, a daughter, age 1 and ½.

4. Ms. Swain agreed in a Purchase Contract dated on or about January 5, 2015 (the "Transfer Agreement," a copy of which was filed with the Court as an exhibit to the Application) to transfer and assign to Peachtree 132 partial monthly payments commencing May 10, 2015 and continuing through and including April 10, 2026, in the initial amount of Four Hundred Ninety-Five and No/100 Dollars ($495.00) per month, increasing by 3% in May of 2016 and in May of each subsequent year through April of 2026. (These monthly payments which were to be transferred and assigned to Peachtree, from May of 2015 through April of 2026 shall hereafter be referred to as the "Assigned Payments." The total monthly structured settlement/annuity payments coming due and owing from May of 2015 through April of 2026 [the "Term"], shall be referred to as the "Term Payments." The portion of each monthly Term Payment coming due and owing from May of 2015 through April of 2026 that are not being transferred and assigned by Ms. Swain and which shall be retained by Ms. Swain, shall hereafter be referred to as the "Retained Swain Monthly Payments")

5. The proposed transfer of the Assigned Payments by and between Peachtree and Ms. Swain, as reflected in the Transfer Agreement and described in the Application, satisfies and complies with all statutory requirements of Chapter 141 of the Texas Civil Practice and Remedies Code (the "Texas Transfer Statute"), and does not contravene any applicable statute or an order of any court or other governmental authority. The transfer also satisfies the Internal

Revenue Code Section 5891 and does not contravene any Federal or State statute or the order of any court or responsible administrative authority.

6.	The transfer is in the best interest of Payee, taking into account the welfare and support of Payee's dependent.

7.	Payee has been advised in writing by Transferee to seek independent professional advice regarding the transfer, and has either received the advice or knowingly waived the opportunity to seek and receive said advice in writing.

8.	Disclosures to the Payee were made, and notices of the hearing and the filing of the Application were provided to all interested parties, including Metropolitan Life and Metropolitan Insurance (collectively, sometimes referred to herein as "MetLife") in accordance with the Texas Transfer Statute. Payee has been advised that her death prior to the due date of the last Assigned Payment shall not affect the transfer of the Assigned Payments from Payee to Peachtree and Payee understands she is giving up his rights, and the rights of her heirs, successors and/or beneficiaries, to the Assigned Payment, and Payee has requested that this transfer be approved.

9.	The Court has considered the objection/opposition filed by Metropolitan Insurance and Metropolitan Life and herby overrules and denies said objection/opposition.

10.	The Court further finds that Metropolitan Insurance and Metropolitan Life are not being and will not be required or directed to divide any structured settlement/annuity payments amongst Ms. Swain and Peachtree or any other party.

11.	This Order is a "Qualified Order" pursuant to 26 U.S.C. sec. 5891, *et seq.*

Based on the foregoing findings and the evidence submitted to the Court and being satisfied that the proposed transfer satisfies all applicable statutory requirements, IT IS

FINAL ORDER APPROVING TRANSFER OF STRUCTURED
SETTLEMENT PAYMENT RIGHTS – Page 3 of 7

ORDERED, ADJUDGED, AND DECREED that the Application is GRANTED and the transfer and assignment of all of Payee's right, title, and interest in and to the Assigned Payments by the Payee to Peachtree, its successors and/or, assigns, is APPROVED.

IT IS FURTHER ORDERED that the MetLife Opposition is hereby denied and overruled.

IT IS FURTHER ORDERED that in furtherance of the Court's order granting the Application and approving the proposed transfer described herein, Metropolitan Life Insurance Company and Metropolitan Insurance and Annuity Company, are hereby authorized and directed to pay and remit to Peachtree (as Ms. Swain's designated and authorized payment agent for purposes of receiving the Term Payments) 100% of the Term Payments (the monthly structured settlement/annuity payments that come due and owing by Metropolitan Life and/or Metropolitan Insurance from May of 2015 through April of 2026), when and as said payments come due. Upon receipt of each monthly Term Payment, Peachtree is entitled to retain the portion of each Term Payment that constitutes an Assigned Payment, and is ordered to pay and remit to Ms. Swain the portion of said Term Payments that constitute the Remaining Swain Monthly Payments. (This arrangement shall be referred to as the "Servicing Arrangement.")

IT IS FURTHER ORDERED that the Term Payments shall be sent directly to Peachtree by Metropolitan Life pursuant to this order and the Servicing Arrangement described herein, at the following address or to such other address designated by Peachtree:

> Peachtree Settlement Funding, LLC
> P.O. Box 83364
> Woburn, MA 01813-3364

IT IS FURTHER ORDERED that Metropolitan Life and Metropolitan Insurance shall absolutely, irrevocably, and forever discharge and satisfy their legal and contractual obligation

FINAL ORDER APPROVING TRANSFER OF STRUCTURED
SETTLEMENT PAYMENT RIGHTS – Page 4 of 7

to make the Term Payments (including the Assigned Payments and the Remaining Swain Monthly Payments) by paying and remitting said Term Payments to Peachtree pursuant to this court order and the Servicing Arrangement and by doing so, Metropolitan Life and Metropolitan Insurance are released from, and shall have not have, any current or future liability to Ms. Swain for the Term Payments. By signing and approving this order, Ms. Swain acknowledges, understands, and agrees that he will receive the Remaining Swain Monthly Payments through Peachtree (as her designated payment agent solely for purposes of receiving and distributing the Term Payments pursuant to the Servicing Agent and this Final Order) and that Metropolitan Life and Metropolitan Insurance shall not be obligated to make any portion of the Term Payments directly to Ms. Swain; that Ms. Swain shall look solely and exclusively to Peachtree for the Remaining Swain Monthly Payments; and that Metropolitan Life and Metropolitan Insurance shall not, following the signing of this Final Order by the Court, have any obligation or liability (contractual or legal) to Ms. Swain relative to the Term Payments, including the Remaining Swain Monthly Payments.

IT IS FURTHER ORDERED that the Remaining Swain Monthly Payments shall remain the property of Ms. Swain, even though said payments are to be paid and remitted to Peachtree pursuant to the Servicing Arrangement and this Final Order.

IT IS FURTHER ORDERED that Metropolitan Life and Metropolitan Insurance are not being forced or required or ordered to split or divide any structured settlement/annuity payments amongst Ms. Swain and Peachtree and shall not be required to do so in the future.

IT IS FURTHER ORDERED that Metropolitan Life and Metropolitan Insurance shall irrevocably change the beneficiary for the Assigned Payments to the Transferee, and no other individual or entity other than the Transferee shall have the authority to change the beneficiary

for the Assigned Payments.

IT IS FURTHER ORDERED that Metropolitan Life and Metropolitan Insurance are directed to issue a formal acknowledgement letter confirming the transfer within twenty (20) days of the date of this Order. The formal acknowledgement letter shall be delivered to Peachtree Settlement Funding, LLC, 201 King of Prussia Road, Suite 200, Radnor, PA 19087, with a copy to Peachtree's counsel.

IT IS FURTHER ORDERED that pursuant to the Texas Transfer Statute, by making and delivering the Term Payments to Transferee as set forth in the preceding paragraphs, MetLife shall, as to all parties except the Transferee, be discharged and released from any and all liability for the Term Payments.

All costs of Court are taxed against MetLife. This Order is a final judgment and is intended to and does fully and finally dispose of all claims and relief requested in this proceeding. All other relief not expressly granted in this order is DENIED.

SIGNED this _____ day of February, 2015.

FEB - 2 2015

_____
JUDGE PRESIDING

FINAL ORDER APPROVING TRANSFER OF STRUCTURED
SETTLEMENT PAYMENT RIGHTS – Page 6 of 7

APPENDIX OF APPELLEE PEACHTREE SETTLEMENT FUNDING, LLC -- PAGE 27

Agreed to and Approved
As to Form and Substance:

NESBITT, VASSAR & MCCOWN, LLP
15851 Dallas Parkway, Suite 800
Addison, TX 75001
PH. (972) 371-2411
Telecopier - (972) 371-2410

Sara Swain

By: _____

Earl S. Nesbitt
State Bar No. 14916900
David S. Vassar
State Bar No. 20503175

ATTORNEY FOR PEACHTREE SETTLEMENT
FUNDING, LLC

# TAB 5

IN RE: § IN THE DISTRICT COURT
§
S. SWAIN § HARRIS COUNTY, TEXAS
§
§ 234TH JUDICIAL DISTRICT

## ORDER CONFIRMING AND REAFFIRMING FINAL ORDER APPROVING TRANSFER OF STRUCTURED SETTLEMENT PAYMENT RIGHTS

On February 2, 2015 a hearing was held in this Court to consider the Amended Applications for Approval of Sale of Partial Payment Rights filed by Peachtree Settlement Funding, LLC (the "Application") relating to a proposed transfer of certain structured settlement payment rights by Sara Swain to applicant and transferee Peachtree Settlement Funding, LLC ("Peachtree") in accordance with Chapter 141 of the Texas Civil Practice & Remedies Code (the "Texas Transfer Statute"). Peachtree appeared at the February 2, 2015 hearing through counsel; payee Sara Swain appeared in person; and interested parties Metropolitan Life Insurance Company and Metropolitan Insurance and Annuity Company (collectively, "MetLife") filed an objection to the Application and proposed transfer involving Sara Swain and Peachtree and appeared at the February 2, 2015 hearing through counsel. The Court heard and considered evidence and the arguments of counsel and at the conclusion of the February 2 hearing, the Court granted the Application and approved the transaction described in the Application and signed a Final Order Approving Transfer of Structured Settlement Payment Rights (the "Final Order").

Another hearing was held in this case on April 6, 2015, relating to Peachtree's Motion to Supplement the Record and Present Additional Testimony (the "Peachtree Motion"), filed pursuant to Tex. R. Civ. P. 270, at which Peachtree and MetLife appeared through counsel and Ms. Swain appeared in person. The Court heard and considered some evidence at the February 2 hearing

ORDER CONFIRMING AND REAFFIRMING FINAL ORDER APPROVING TRANSFER OF
STRUCTURED SETTLEMENT PAYMENT RIGHTS – Page 1

regarding the Application, but there was some questions raised as to whether the record accurately reflected all of said evidence. Therefore, the Court, finding that it still has plenary power and jurisdiction over this case, granted the Peachtree Motion and permitted the parties to formally offer evidence at the hearing held on April 6, 2015 to insure that the record was accurate and complete.

Having heard and considered the evidence and the arguments of counsel, the Court confirms and reaffirms its findings and rulings set forth in the Final Order and incorporates all of the findings and rulings set forth in the Final Order herein, as if fully set forth at length, including granting the Application and making the requisite findings under the Tex. Civ. Prac. & Rem. Code Ann. § 141.001 et. Seq. (the Texas Transfer Statute), which are set forth in the Final Order.

IT IS ORDERED, ADJUDGED, AND DECREED that the Final Order, together with this Order, shall constitute a final judgment in this case. All other relief, not specifically granted herein and in the Final Order is hereby denied.

SIGNED on the _6_ day of April, 2015.

_____
JUDGE PRESIDING

AGREED AS TO FORM AND
SUBSTANCE


_Sara Swain_
Sara Swain

NESBITT, VASSAR & MCCOWN, LLP
15851 Dallas Parkway, Suite 800
Addison, TX 75001
PH. (972) 371-2411
Telecopier - (972) 371-2410

By: _____

Earl S. Nesbitt
State Bar No. 14916900
David S. Vassar
State Bar No. 20503175

ATTORNEY FOR PEACHTREE SETTLEMENT
FUNDING, LLC

# TAB 6

NO. 51350

| | | |
|---|---|---|
| IN RE | § | IN THE DISTRICT COURT OF |
| | § | |
| J. RAINS, | § | HILL COUNTY, TEXAS |
| | § | |
| ANNUITANT | § | 66th JUDICIAL DISTRICT |

### Final Order Approving Transfer of
### Structured Settlement Payment Rights

On this day, the Court considered the Application of J.G. Wentworth Originations, LLC (also referred to herein as the "Transferee" or "JGW") for Approval of the Transfer of Structured Settlement Payment Rights (the "Application") from Jamie Rains ("Payee") to JGW pursuant to Chapter 141 of the Texas Civil Practice & Remedies Code. The Court, after due consideration of the Application, any response thereto, and the evidence on file and presented at the hearing, hereby makes the following findings:

1.  The transfer satisfies all statutory requirements of the Structured Settlement Protection Act, Chapter 141 of the Texas Civil Practice and Remedies Code (the "Act"), and does not contravene any applicable statute or an order of any court or other governmental authority; the transfer also satisfies the Internal Revenue Code Section 5891 and does not contravene any Federal or State statute or the order of any court or responsible administrative authority;

2.  The transfer is in the best interest of Payee, taking into account the welfare and support of Payee's dependents, if any;

3.  Payee has been advised in writing by Transferee to seek independent professional advice regarding the transfer, and has either received the advice or knowingly waived the advice in writing;

A CERTIFIED COPY
ATTEST_____ 2-21 , 20 14
ANGELIA ORR
DISTRICT CLERK
HILL COUNTY, TEXAS
BY_____

4. Jurisdiction and venue are proper in this Court, and disclosures to Payee were made, and notices were given to the Interested Parties in accordance with the Act. Payee has been advised that her death prior to the due date of the last Assigned Payment shall not affect the transfer of the Assigned Payments (defined below) from Payee to JGW and Payee understands she is giving up his rights, and the rights of her heirs, successors and/or beneficiaries, to the Assigned Payments, and Payee has requested that this transfer be approved, and

5. This Order is a "Qualified Order" pursuant to 26 U.S.C. sec. 5891, *et seq.*

BASED on the foregoing findings and being satisfied that the proposed transfer satisfies all applicable statutory requirements, it is hereby,

ORDERED, ADJUDGED, AND DECREED that the Application is GRANTED and the assignment by Payee to JGW its successors and/or, assigns, of all Payee's right, title, and interest in and to the Assigned Payments is APPROVED. It is further

ORDERED that Annuity Issuer, Metropolitan Life Insurance Company, and Annuity Owner, Metropolitan Insurance And Annuity Company, are hereby directed on the dates set forth below to deliver and make payable to JGW its successors and/or assigns, the following structured settlement payments, regardless of whether Payee is living:

A) 120 monthly payments of $405.00 each, beginning on March 22, 2014 and ending on February 22, 2024

(the "Assigned Payments"). The Assigned Payments shall be sent to the following address or to such other address designated by J.G. Wentworth Originations, LLC:

> J.G. Wentworth Originations, LLC
> P.O Box 83364
> Woburn, MA 01813-3364

It is further

- 2 -

ORDERED that the Annuity Issuer and Annuity Owner are not required to split structured settlement payments and shall forward the entire amount of each structured settlement payment that includes an Assigned Payment to Transferee with Transferee to retain each Assigned Payment and remit the remainder of each payment to the Payee.

ORDERED that the Transferee shall be liable to that Annuity Issuer and Annuity Owner:

    a.    If the transfer contravenes the terms of the structured settlement, for any taxes incurred by Annuity Owner or the Annuity Issuer as a consequence of the transfer; and

    b.    For any liabilities or costs, including reasonable costs and attorneys' fees, arising from compliance by such parties with this order of the Court or arising as a consequence of the Transferee's failure to comply with the Act.

ORDERED that the Annuity Issuer and Annuity Owner shall irrevocably change the beneficiary for the Transferred payments to the Transferee, and no other individual or entity other than the Transferee shall have the authority to change beneficiary for the Transferred Payments.

ORDERED that Annuity Issuer and Annuity Owner are directed to issue a formal acknowledgement letter of the transfer within twenty (20) days of the date of receipt of this Order. The formal acknowledgement letter shall be delivered to JGW, 201 King of Prussia Road, Suite 200, Radnor, PA 19087. It is further

ORDERED that pursuant to the Act, by making and delivering the Assigned Payments to Transferee as set forth in the preceding paragraphs, Annuity Owner and Annuity Issuer shall, as to all parties except Transferee, be discharged and released from any and all liability for the Assigned Payments.

- 3 -

This Order finally disposes of all claims and all parties; all motions not specifically granted herein are DENIED.

*This is a Final Judgment.*

SIGNED this _21_ day of _February_ 20_14_.

_____
JUDGE PRESIDING

Agreed to and Approved
As to Form and Substance:

_____
Jamie Rains

JULIE PI EVANS LAW FIRM
P.O. BOX 924506
HOUSTON, TX 77292-4506
(281) 846-6252 (TELEPHONE)
(888) 598-3598 (FACSIMILE)

BY: _____
Julie Pi Evans
State Bar No. 24037280

ATTORNEY FOR APPLICANT

- 4 -

# TAB 7

No. 07-14-00132-CV

## IN THE COURT OF APPEALS
## SEVENTH DISTRICT OF TEXAS AT AMARILLO

*In re J. Rains, Annuitant*

*Metropolitan Life Insurance Company and Metropolitan Insurance & Annuity Company,*

**Appellants,**

*J.G. Wentworth Originations, L.L.C. and J. Rains,*

**Appellees.**

**Appeal from Cause No. 51350**
**In the 66th Judicial District Court, Hill County, Texas**

## BRIEF OF APPELLANTS

Stephen R. Harris
Andrew Jay Lorin
Thomas L. Mueller
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone 215-988-2700
Facsimile 215-988-2757

Michael S. Alfred
State Bar No. 24014416
Hallett & Perrin, P.C.
1445 Ross Avenue, Suite 2400
Dallas, TX 75202
Telephone: (214) 922-4121
Facsimile: (214) 922-4141

*ATTORNEYS FOR APPELLANTS,*
*METROPOLITAN LIFE INSURANCE COMPANY*
*AND METROPOLITAN INSURANCE & ANNUITY COMPANY*

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES AND COUNSEL .......................................................i

TABLE OF CONTENTS............................................................................ iii

INDEX OF AUTHORITIES ........................................................................v

RECORD REFERENCES .............................................................................1

STATEMENT OF THE CASE.......................................................................1

STATEMENT REGARDING ORAL ARGUMENT ........................................2

ISSUES PRESENTED...................................................................................3

STATEMENT OF FACTS ............................................................................4

     A.    The Underlying Settlement ............................................................4

     B.    Wentworth's Proposed Purchase of Ms. Rains' Payments..................8

     C.    Trial Court Proceedings .................................................................9

SUMMARY OF ARGUMENT......................................................................11

ARGUMENT...............................................................................................13

I.     APPELLATE REVIEW STANDARD .......................................................13

     A.    Issues Concerning Statutory Interpretation, the Forced
           Servicing Arrangement, and Principles of Contract
           Interpretation ...............................................................................13

     B.    Best Interest Ruling.......................................................................14

II.    THE TRIAL COURT CANNOT IMPOSE A SERVICING
       ARRANGEMENT ON METLIFE................................................................15

     A.    Based on Principles of Contract Law, the Trial Court Erred in
           Forcing MetLife to Contract with Wentworth by Imposing a
           Servicing Arrangement ..................................................................15

-iii-

B.   The Servicing Arrangement Is Improper Because It Violates MetLife's Liberty to Contract and Imposes Specific and Mandatory Relief Upon MetLife Where MetLife Had No Prior Contract With Wentworth and Was Not a Defendant Subject to Injunctive Relief ............................................................................... 21

C.   The Servicing Arrangement Violates the Texas Act by Doing Indirectly What The Texas Act Prohibits to Be Done Directly ......... 24

III.   THE TRIAL COURT'S APPROVAL OF THE PROPOSED TRANSFER CONTRAVENES THE TERMS OF THE UNDERLYING SETTLEMENT DOCUMENTS ..................................... 30

IV.   THE TRIAL COURT'S APPROVAL OF THE PROPOSED TRANSFER CONTRAVENES THE TERMS OF THE AGREED FINAL JUDGMENT .............................................................................. 33

V.   THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT THE PROPOSED TRANSFER WAS IN MS. RAINS' BEST INTEREST, TAKING INTO ACCOUNT THE WELFARE AND SUPPORT OF HER DEPENDENTS ......................................................... 34

CONCLUSION AND PRAYER ................................................................. 39

APPENDIX ................................................................................................ 40

**APPENDIX OF APPELLEE PEACHTREE SETTLEMENT FUNDING, LLC -- PAGE 41**

# TAB 8

NO. 14-231-C

| IN RE | § | IN THE COUNTY COURT AT LAW |
|---|---|---|
| | § | |
| J. GALVAN, | § | OF |
| | § | |
| ANNUITANT | § | KLEBERG COUNTY, TEXAS |

## Final Order Approving Transfer of
### Structured Settlement Payment Rights

ON THIS DAY came on for final hearing and trial the Application of Peachtree Settlement Funding, LLC (also referred to herein as the "Transferee" or "Peachtree") for Approval of the Transfer of Structured Settlement Payment Rights (the "Application") from Jonathan Galvan ("Payee" or "Mr. Galvan") to Peachtree pursuant to Chapter 141 of the Texas Civil Practice & Remedies Code (the "Texas Transfer Statute"). The Court, after due consideration of the Application, the Opposition/Objection to the proposed transfer filed by Metropolitan Insurance and Annuity Company and Metropolitan Life Insurance Company (the "MetLife Opposition"), and the other pleadings and documents on file with the Court and the evidence and testimony presented at the hearing, hereby makes the following findings:

1. This Court has subject matter jurisdiction over this proceeding and personal jurisdiction over the parties. Venue of this matter is proper in Kleberg County, Texas and this Court because Mr. Galvan resides in Kleberg County, Texas. All persons/entities entitled to be served and/or provided notice of these proceedings have been served and/or provided such notice or have appeared in this proceeding directly and/or through counsel.

2. Mr. Galvan is currently entitled to receive structured settlement payments from Metropolitan Insurance and Annuity Company ("Metropolitan Insurance"). Metropolitan Insurance funded its obligation to make those structured settlement payments to Mr. Galvan

through the issuance of an annuity (Group Annuity contract # 8281/Certificate # 32711) by Metropolitan Life Insurance Company ("Metropolitan Life").

3. Mr. Galvan has one dependent, as that term is defined in the Texas Transfer Statute, a daughter, age 7.

4. Mr. Galvan agreed in a Purchase Contract dated on or about April 17, 2014 (the "Transfer Agreement," a copy of which has been filed with the Court) to transfer and assign to Peachtree one (1) partial lump sum structured settlement payment in the amount of Sixty Thousand and No/100 Dollars ($60,000.00) due and payable on November 16, 2017, out of a total lump sum payment due on said date in the amount of $153,853.00. (The portion of the November 16, 2017 lump sum structured settlement payment transferred and assigned to Peachtree [in the amount of $60,000.00] shall hereafter be referred to as the "Assigned Payment." The entire lump sum payment, in the amount of $153,853.00, due on November 16, 2017, shall be referred to as the "2017 Payment." The portion of the 2017 Payment that has not been transferred and assigned to Peachtree, and is being retained by Mr. Galvan, shall hereafter be referred to as the "Remaining Galvan Payment").

5. The proposed transfer of the Assigned Payment by and between Peachtree and Mr. Galvan, as reflected in the Transfer Agreement and described in the Application, satisfies and complies with all statutory requirements of Chapter 141 of the Texas Civil Practice and Remedies Code (the "Texas Transfer Statute"), and does not contravene any applicable statute or an order of any court or other governmental authority. The transfer also satisfies the Internal Revenue Code Section 5891 and does not contravene any Federal or State statute or the order of any court or responsible administrative authority.

6. The transfer is in the best interest of Payee, taking into account the welfare and support of Payee's dependent;

7. Payee has been advised in writing by Transferee to seek independent professional advice regarding the transfer, and has either received the advice or knowingly waived the opportunity to seek and receive said advice in writing.

8. Disclosures to the Payee were made, and notices of the hearing and the filing of the Application were provided to all interested parties, including Metropolitan Life and Metropolitan Insurance (collectively, sometimes referred to herein as "MetLife") in accordance with the Texas Transfer Statute. Payee has been advised that his death prior to the due date of the last Assigned Payment shall not affect the transfer of the Assigned Payment from Payee to Peachtree and Payee understands he is giving up his rights, and the rights of his heirs, successors and/or beneficiaries, to the Assigned Payment, and Payee has requested that this transfer be approved.

9. The Court has considered the objection/opposition filed by Metropolitan Insurance and Metropolitan Life and herby overrules and denies said objection/opposition.

10. The Court further finds that Metropolitan Insurance and Metropolitan Life are not being and will not be required or directed to divide any structured settlement/annuity payments amongst Galvan and Peachtree or any other party.

11. This Order is a "Qualified Order" pursuant to 26 U.S.C. sec. 5891, *et seq.*

Based on the foregoing findings and the evidence submitted to the Court and being satisfied that the proposed transfer satisfies all applicable statutory requirements, IT IS ORDERED, ADJUDGED, AND DECREED that the Application is GRANTED and the

assignment by Payee to Peachtree, its successors and/or, assigns, of all Payee's right, title, and interest in and to the Assigned Payment is APPROVED.

IT IS FURTHER ORDERED that the MetLife Opposition is hereby denied and overruled.

IT IS FURTHER ORDERED that in furtherance of the Court's order granting the Application and approving the proposed transfer described herein, Annuity Issuer, Metropolitan Life Insurance Company, and Annuity Owner, Metropolitan Insurance and Annuity Company, are hereby authorized and directed to pay and remit to Peachtree (as Mr. Galvan's designated and authorized payment agent for purposes of receiving the 2017 payment) 100% of the 2017 Payment (in the amount of $153,853.00), when said payment comes due on or about November 16, 2017. Upon receipt of the 2017 Payment, Peachtree is entitled to retain the portion of said 2017 Payment that constitutes the Assigned Payment (in the amount of $60,000.00), and is ordered to pay and remit to Mr. Galvan the portion of said payment that constitutes the Remaining Galvan Payment (in the amount of $93,853.00). (This arrangement shall be referred to as the "Servicing Arrangement.")

IT IS FURTHER ORDERED that 2017 Payment shall be sent directly to Peachtree by Metropolitan Life pursuant to this order and the Servicing Arrangement described herein, at the following address or to such other address designated by Peachtree:

> Peachtree Settlement Funding, LLC
> P.O. Box 83364
> Woburn, MA 01813-3364

IT IS FURTHER ORDERED that Metropolitan Life and Metropolitan Insurance shall absolutely and irrevocably discharge and satisfy their legal and contractual obligation to make the 2017 Payment (including the Assigned Payment and the Remaining Galvan Payment) by

paying and remitting said payment to Peachtree pursuant to this court order and the Servicing Arrangement and by doing so, Metropolitan Life and Metropolitan Insurance are released from, and shall have not have, any current or future liability to Mr. Galvan for the 2017 Payment. By signing and approving this order below, Mr. Galvan acknowledges, understands, and agrees that he will receive the Remaining Galvan Payment through Peachtree (as his designated payment arrangement solely for purposes of receiving the 2017 Payment under this Final Order) and that MetLife shall not be obligated to make any portion of the 2017 Payment directly to Mr. Galvan; that Mr. Galvan shall look solely and only to Peachtree for the Remaining Galvan Payment; and that MetLife shall not, following the signing of this Final Order by the Court, have any obligation (contractual or legal) or liability to Mr. Galvan relative to the 2017 Payment, including the Remaining Galvan Payment.

IT IS FURTHER ORDERED that the Remaining Galvan Payment shall remain the property of Mr. Galvan, even though said payment is to be paid and remitted to Peachtree pursuant to the Servicing Arrangement.

IT IS FURTHER ORDERED that MetLife is not required and is not being ordered to split or divide any structured settlement payments amongst Mr. Galvan and Peachtree.

IT IS FURTHER ORDERED that MetLife shall irrevocably change the beneficiary for the Assigned Payment to the Transferee, and no other individual or entity other than the Transferee shall have the authority to change the beneficiary for the Assigned Payment.

IT IS FURTHER ORDERED that Annuity Issuer and Annuity Owner are directed to issue a formal acknowledgement letter of the transfer within twenty (20) days of the date of receipt of this Order. The formal acknowledgement letter shall be delivered to Peachtree

*EJW*
*SMG*
*TRH*
*as to*
*July*
*only*

~~Settlement Funding, LLC, 201 King of Prussia Road, Suite 200, Radnor, PA 19087, with a copy to Peachtree's counsel.~~

IT IS FURTHER ORDERED that pursuant to the Texas Transfer Statute, by making and delivering the 2017 Payment to Transferee as set forth in the preceding paragraphs, MetLife shall, as to all parties except Transferee, be discharged and released from any and all liability for the 2017 Payment.

All costs of Court are taxed against MetLife. This Order is a final judgment and is intended to and does fully and finally dispose of all claims and relief requested in this proceeding. All other relief not expressly granted in this order is DENIED.

SIGNED this 14th day of July 2014.

_____
JUDGE PRESIDING

Agreed to and Approved
As to Form and Substance:


_____
Jonathan Galvan

NESBITT, VASSAR & MCCOWN, LLP
15851 Dallas Parkway, Suite 800
Addison, TX 75001
PH. (972) 371-2411
Telecopier - (972) 371-2410

By: _____
Earl S. Nesbitt
State Bar No. 14916900
David S. Vassar
State Bar No. 20503175

ATTORNEY FOR PEACHTREE SETTLEMENT
FUNDING, LLC

FINAL ORDER APPROVING TRANSFER OF STRUCTURED
SETTLEMENT PAYMENT RIGHTS – Page 6 of 6

# TAB 9



# NUMBER 13-14-00463-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**In Re J. Galvan, Annuitant**

**On Appeal from the County Court at Law
of Kleberg County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, Perkes
Memorandum Opinion Per Curiam**

Appellants, Metropolitan Life Insurance Company and Metropolitan Insurance and Annuity Company, perfected an appeal from a judgment entered by the County Court at Law of Kleberg County, Texas, in cause number 14-231-C. Appellants have filed an unopposed motion to dismiss the appeal on grounds that appellants no longer wish to pursue this appeal. Appellants request that this Court dismiss the appeal.

The Court, having considered the documents on file and appellants' motion to dismiss the appeal, is of the opinion that the motion should be granted. *See* TEX. R. APP.

P. 42.1(a). Appellants' motion to dismiss is granted, and the appeal is hereby DISMISSED. Costs will be taxed against appellants. *See* TEX. R. APP. P. 42.1(d) ("Absent agreement of the parties, the court will tax costs against the appellant."). Having dismissed the appeal at appellants' request, no motion for rehearing will be entertained, and our mandate will issue forthwith.

PER CURIAM

Delivered and filed the 2nd
day of October, 2014.

2

# TAB 10

| IN RE | § | IN THE COUNTY COURT AT LAW |
|---|---|---|
| | § | |
| T. KLEMER, | § | OF |
| | § | |
| ANNUITANT | § | HOOD COUNTY, TEXAS |

## Final Order Approving Transfer of Structured Settlement Payment Rights

On this day, came on for final hearing and trial the Application of J.G. Wentworth Originations, LLC (also referred to herein as the "Transferee" or "JGW") for Approval of the Transfer of Structured Settlement Payment Rights (the "Application") from Tycen Klemer ("Payee" or "Mr. Klemer") to JGW pursuant to Chapter 141 of the Texas Civil Practice & Remedies Code (the "Texas Transfer Statute"). The Court, after due consideration of the Application, the Opposition/Objection to the proposed transfer filed by Metropolitan Reinsurance Company and Metropolitan Life Insurance Company (the "MetLife Opposition"), and the other pleadings and documents on file with the Court and the evidence and testimony presented at the hearing, hereby makes the following findings:

1. This Court has subject matter jurisdiction over this proceeding and personal jurisdiction over the parties. Venue of this matter is proper in Hood County, Texas and this Court because Mr. Klemer resides in Hood County, Texas. All persons/entities entitled to be served and/or provided notice of these proceedings have been served and/or provided such notice or have appeared in this proceeding directly and/or through counsel.

2. Mr. Klemer is currently entitled to receive structured settlement payments from Metropolitan Reinsurance Company ("Metropolitan Reinsurance"). Metropolitan Reinsurance funded its obligation to make those structured settlement payments to Mr. Klemer through the

**FINAL ORDER APPROVING TRANSFER OF STRUCTURED SETTLEMENT PAYMENT RIGHTS – Page 1 of 6**

issuance of an annuity (contract # NS24995ALX) by Metropolitan Life Insurance Company ("Metropolitan Life").

3. Mr. Klemer has one dependent, as that term is defined in the Texas Transfer Statute, a son, age 3.

4. Mr. Klemer agreed in a Purchase Contract dated on or about January 2, 2014 (the "Transfer Agreement," a copy of which has been filed with the Court) to transfer and assign to JGW one (1) partial lump sum structured settlement payment in the amount of Thirty-Five Thousand and No/100 Dollars ($35,000.00) due and payable on August 15, 2016, out of a total lump sum payment due on said date in the amount of $50,000.00. (The portion of the August 15, 2016 lump sum structured settlement payment transferred and assigned to JGW [in the amount of $ 35,000.00] shall hereafter be referred to as the "Assigned Payment." The entire lump sum payment, in the amount of $50,000.00, due on August 15, 2016, shall be referred to as the "2016 Payment." The portion of the 2016 Payment that has not been transferred and assigned to JGW, and is being retained by Mr. Klemer, shall hereafter be referred to as the "Remaining Klemer Payment").

5. The proposed transfer of the Assigned Payment by and between JGW and Mr. Klemer, as reflected in the Transfer Agreement and described in the Application, satisfies and complies with all statutory requirements of Chapter 141 of the Texas Civil Practice and Remedies Code (the "Texas Transfer Statute"), and does not contravene any applicable statute or an order of any court or other governmental authority. The transfer also satisfies the Internal Revenue Code Section 5891 and does not contravene any Federal or State statute or the order of any court or responsible administrative authority.

6. The transfer is in the best interest of Payee, taking into account the welfare and support of Payee's dependent;

7. Payee has been advised in writing by Transferee to seek independent professional advice regarding the transfer, and has either received the advice or knowingly waived the opportunity to seek and receive said advice in writing.

8. Disclosures to the Payee were made, and notices of the hearing and the filing of the Application were provided to all interested parties, including Metropolitan Life and Metropolitan Reinsurance (collectively, sometimes referred to herein as "MetLife") in accordance with the Texas Transfer Statute. Payee has been advised that his death prior to the due date of the last Assigned Payment shall not affect the transfer of the Assigned Payment from Payee to JGW and Payee understands he is giving up his rights, and the rights of his heirs, successors and/or beneficiaries, to the Assigned Payment, and Payee has requested that this transfer be approved.

9. The Court has considered the objection/opposition filed by Metropolitan Reinsurance and Metropolitan Life and herby overrules and denies said objection/opposition.

10. The Court further finds that Metropolitan Reinsurance and Metropolitan Life is not being and will not be required or directed to divide any structured settlement/annuity payments amongst Klemer and JGW or any other party.

11. This Order is a "Qualified Order" pursuant to 26 U.S.C. sec. 5891, *et seq.*

Based on the foregoing findings and the evidence submitted to the Court and being satisfied that the proposed transfer satisfies all applicable statutory requirements, IT IS ORDERED, ADJUDGED, AND DECREED that the Application is GRANTED and the

assignment by Payee to JGW its successors and/or, assigns, of all Payee's right, title, and interest in and to the Assigned Payment is APPROVED.

IT IS FURTHER ORDERED that the MetLife Opposition is hereby denied and overruled.

IT IS FURTHER ORDERED that Annuity Issuer, Metropolitan Life Insurance Company, and Annuity Owner, Metropolitan Reinsurance Company, are hereby directed to pay and remit to JGW 100% of the 2016 Payment (in the amount of $50,000.00), when said payment comes due on or about August 15, 2016. Upon receipt of the 2016 Payment, JGW is entitled to retain the portion of said 2016 Payment that constitutes the Assigned Payment (in the amount of $35,000.00), and is ordered to pay and remit to Mr. Klemer the portion of said payment that constitutes the Remaining Klemer Payment (in the amount of $15,000.00). (This arrangement shall be referred to as the "Servicing Arrangement.")

IT IS FURTHER ORDERED that 2016 Payment shall be sent directly to JGW by Metropolitan Life pursuant to this order and the Servicing Arrangement described herein, at the following address or to such other address designated by J.G. Wentworth Originations, LLC:

J.G. Wentworth Originations, LLC
P.O Box 83364
Woburn, MA 01813-3364

IT IS FURTHER ORDERED that Metropolitan Life and Metropolitan Reinsurance shall absolutely and irrevocably discharge and satisfy their legal and contractual obligation to make the 2016 Payment (including the Assigned Payment and the Remaining Klemer Payment) by paying and remitting said payment to JGW pursuant to this court order and the Servicing Arrangement and by doing so, Metropolitan Life and Metropolitan Reinsurance is released from, and shall have not have, any current or future liability to Mr. Klemer for the 2016

Payment. By signing and approving this order below, Mr. Klemer acknowledges, understands, and agrees that he will receive the Remaining Klemer Payment through JGW and that MetLife shall not be obligated to make any portion of the 2016 Payment directly to Mr. Klemer; that Mr. Klemer shall look solely and only to JGW for the Remaining Klemer Payment; and that MetLife shall not, following the signing of this Final Order by the Court, have any obligation (contractual or legal) or liability to Mr. Klemer relative to the 2016 Payment, including the Remaining Klemer Payment.

IT IS FURTHER ORDERED that the Remaining Klemer Payment shall remain the property of Mr. Klemer, even though said payment is to be paid and remitted to JGW pursuant to the Servicing Arrangement.

IT IS FURTHER ORDERED that MetLife is not required and is not being ordered to split or divide any structured settlement payments amongst Mr. Klemer and JGW.

IT IS FURTHER ORDERED that MetLife shall irrevocably change the beneficiary for the Assigned Payment to the Transferee, and no other individual or entity other than the Transferee shall have the authority to change the beneficiary for the Assigned Payment.

IT IS FURTHER ORDERED that Annuity Issuer and Annuity Owner are directed to issue a formal acknowledgement letter of the transfer within twenty (20) days of the date of receipt of this Order. The formal acknowledgement letter shall be delivered to J.G. Wentworth Originations, L.L.C., 201 King of Prussia Road, Suite 200, Radnor, PA 19087, with a copy to JGW's counsel.

IT IS FURTHER ORDERED that pursuant to the Texas Transfer Statute, by making and delivering the 2016 Payment to Transferee as set forth in the preceding paragraphs, MetLife

shall, as to all parties except Transferee, be discharged and released from any and all liability for the 2016 Payment.

All costs of Court are taxed against MetLife. This Order is a final judgment and is intended to and does fully and finally dispose of all claims and relief requested in this proceeding. All other relief not expressly granted in this order is DENIED.

SIGNED this _____ day of May 2014.

_____
JUDGE PRESIDING

# FILED

## MAY 0 7 2014

*Mary Burnett*
MARY BURNETT
CLERK COUNTY COURT
AT LAW, HOOD COUNTY TX

Agreed to and Approved
As to Form and Substance:

_____
Tycen Klemer

NESBITT, VASSAR & MCCOWN, LLP
15851 Dallas Parkway, Suite 800
Addison, TX 75001
PH. (972) 371-2411
Telecopier - (972) 371-2410

By: _____
Earl S. Nesbitt
State Bar No. 14916900
David S. Vassar
State Bar No. 20503175

ATTORNEY FOR J.G. WENTWORTH
ORIGINATIONS, LLC

<u>FINAL ORDER APPROVING TRANSFER OF STRUCTURED</u>
<u>SETTLEMENT PAYMENT RIGHTS</u> – **Page 6 of 6**

# TAB 11



### NO. 02-14-00151-CV

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY AND METROPOLITAN REINSURANCE COMPANY | APPELLANTS |

V.

| | |
|---|---|
| T. KLEMER AND J.G. WENTWORTH ORGINATIONS, LLC | APPELLEES |

------------

FROM THE COUNTY COURT OF HOOD COUNTY
TRIAL COURT NO. C06666

------------

## MEMORANDUM OPINION[1] AND JUDGMENT

------------

We have considered "Appellant's Unopposed Motion To Voluntarily Dismiss Appeal." It is the court's opinion that the motion should be granted; therefore, we dismiss the appeal. *See* Tex. R. App. P. 42.1(a)(1), 43.2(f).

---

[1]*See* Tex. R. App. P. 47.4.

Costs of the appeal shall be paid by appellants, for which let execution issue.  *See* Tex. R. App. P. 42.1(d).

PER CURIAM

PANEL:  MEIER, J.; LIVINGSTON, C.J.; and GABRIEL, J.

DELIVERED:  August 14, 2014

2

# TAB 12

IN RE: § IN THE COUNTY COURT AT LAW

§

MICHAEL CORTEZ § NO. 3 OF

§

§ BRAZORIA COUNTY, TEXAS

## Final Order Approving Transfer of
## Partial Structured Settlement Payment Rights

On this day came on for final hearing and trial and consideration by the Court of the Application for Approval of Sale of Partial Payment Rights (the "Application") filed J.G. Wentworth Originations, LLC ("J.G. Wentworth" or "Transferee"), and Michael Cortez as the payee ("Payee" or "Mr. Cortez") pursuant to Chapter 141 of the Texas Civil Practice & Remedies Code (the "Texas Transfer Statute"). The Court, after due consideration of the Application, the Objection and Response to the proposed transfer filed by Metropolitan Insurance and Annuity Company and Metropolitan Life Insurance Company (the "MetLife Opposition"), and the other pleadings and documents on file with the Court and the evidence and testimony presented at the hearing, hereby makes the following findings:

1.     This Court has subject matter jurisdiction over this proceeding and personal jurisdiction over the parties. Venue of this matter is proper in Brazoria County, Texas and this Court because Mr. Cortez resides in Brazoria County, Texas. All persons/entities entitled to be served and/or provided notice of these proceedings have been served and/or provided such notice or have appeared in this proceeding directly and/or through counsel.

2.     Mr. Cortez is currently entitled to receive structured settlement payments from Metropolitan Insurance and Annuity Company ("Metropolitan Insurance"). Metropolitan Insurance funded its obligation to make those structured settlement payments to Mr. Cortez



THE STATE OF TEXAS
COUNTY OF BRAZORIA
I certify that the above and foregoing is a full, true and correct photographic copy of the original record on file in my office. Given under my hand and seal of the court in my lawful custody and possession. JOYCE HUDMAN, BRAZORIA COUNTY CLERK
BY_____DEPUTY

<u>FINAL ORDER APPROVING TRANSFER OF PARTIAL</u>
<u>STRUCTURED SETTLEMENT PAYMENT RIGHTS</u> -- Page 1 of 6

through the issuance of an annuity (Group Annuity contract # 8281/Certificate #31578) by Metropolitan Life Insurance Company ("Metropolitan Life").

3. Mr. Cortez is married and has one minor child and one on the way therefore currently has two dependents, as that term is defined in the Texas Transfer Statute.

4. Mr. Cortez agreed in a Purchase Contract dated on or about April 8, 2015 (the "Transfer Agreement," a copy of which was filed with the Court as an exhibit to the Application) to transfer and assign to J.G. Wentworth 328 partial monthly payments in the amount of One Hundred Seventy-Eight and No/100 Dollars ($178.00) commencing August 10, 2015 and continuing through and including November 10, 2042. (These monthly payments which were to be transferred and assigned by Mr. Cortez from August of 2015 through November of 2042 shall hereafter be referred to as the "Cortez Assigned Payments." The total monthly structured settlement/annuity payments coming due and owing from August of 2015 through November of 2042 [the "Term"], shall be referred to as the "Term Payments." The portion of each monthly Term Payment coming due and owing from August of 2015 through November of 2042 that are not being transferred and assigned by Mr. Cortez and which shall be retained by Mr. Cortez, shall hereafter be referred to as the "Retained Cortez Monthly Payments").

5. The proposed transfer of the Cortez Assigned Payments by Mr. Cortez to J.G. Wentworth, as reflected in the Transfer Agreement and described in the Application, satisfies and complies with all statutory requirements of Chapter 141 of the Texas Civil Practice and Remedies Code (the "Texas Transfer Statute"), and does not contravene any applicable statute or an order of any court or other governmental authority. The transfer also satisfies the Internal Revenue Code Section 5891 and does not contravene any Federal or State statute or the order of any court or responsible administrative authority.

THE STATE OF TEXAS
COUNTY OF BRAZORIA
I certify that the above and foregoing is a full, true and correct photographic copy of the original record on file in my office. Given under my hand and seal of the court in my lawful custody and possession. JOYCE HUDMAN, BRAZORIA COUNTY CLERK
BY_____ DEPUTY

**APPENDIX OF APPELLEE PEACHTREE SETTLEMENT FUNDING, LLC -- PAGE 64**

6. The transfer is in the best interest of Payee, taking into account the welfare and support of Payee's dependents, if any.

7. Payee has been advised in writing by J.G. Wentworth to seek independent professional advice regarding the transfer, and has either received the advice or knowingly waived the opportunity to seek and receive said advice in writing.

8. Disclosures to the Payee were made, and notices of the hearing and the filing of the Application were provided to all interested parties, including Metropolitan Life and Metropolitan Insurance (collectively, sometimes referred to herein as "MetLife") in accordance with the Texas Transfer Statute. Payee has been advised that his death prior to the due date of the last Cortez Assigned Payment shall not affect the transfer of the Cortez Assigned Payments from Payee to J.G. Wentworth and Payee understands he is giving up his rights, and the rights of his heirs, successors and/or beneficiaries, to the Cortez Assigned Payment, and Payee has requested that this transfer be approved.

9. The Court has considered the objection/opposition filed by Metropolitan Insurance and Metropolitan Life and herby overrules and denies said objection/opposition.

10. The Court further finds that Metropolitan Insurance and Metropolitan Life are not being and will not be required or directed to divide any structured settlement/annuity payments amongst Mr. Cortez and J.G. Wentworth or any other party.

11. This Order is a "Qualified Order" pursuant to 26 U.S.C. sec. 5891, *et seq.*

Based on the foregoing findings and the evidence submitted to the Court and being satisfied that the proposed transfer satisfies all applicable statutory requirements, IT IS ORDERED, ADJUDGED, AND DECREED that the Application is GRANTED and the transfer and assignment of all of Payee's right, title, and interest in and to the Cortez Assigned Payments by the Payee to J.G. Wentworth, is APPROVED.

**FINAL ORDER APPROVING TRANSFER OF PARTIAL STRUCTURED SETTLEMENT PAYMENT RIGHTS** – Page 3 of 6

THE STATE OF TEXAS
COUNTY OF BRAZORIA
I certify that the above and foregoing is a full, true and correct photographic copy of the original record on file in my office. Given under my hand and seal of the court in my lawful custody and possession, JOYCE HUDMAN, BRAZORIA COUNTY CLERK
DEPUTY

IT IS FURTHER ORDERED that the MetLife Opposition is hereby denied and overruled.

IT IS FURTHER ORDERED that in furtherance of the Court's order granting the Application and approving the proposed transfer described herein, Metropolitan Life Insurance Company and Metropolitan Insurance and Annuity Company, are hereby authorized and directed to pay and remit to J.G. Wentworth (as Mr. Cortez designated and authorized payment agent for purposes of receiving the Term Payments) 100% of the Term Payments (the monthly structured settlement/annuity payments that come due and owing by Metropolitan Life and/or Metropolitan Insurance from August of 2015 through November of 2042), when and as said payments come due. Upon receipt of each monthly Term Payment, J.G. Wentworth is entitled to retain the portion of each Term Payment that constitutes a Cortez Assigned Payment ($ 178.00 out of the total monthly payment of $ 678.00 per month), and is ordered to timely pay and remit to Mr. Cortez the portion of said Term Payments that constitute the Remaining Cortez Monthly Payments. (This arrangement shall be referred to as the "Servicing Arrangement.")

IT IS FURTHER ORDERED that the Term Payments shall be sent directly to J.G. Wentworth by Metropolitan Life pursuant to this order and the Servicing Arrangement described herein, at the following address or to such other address designated by J.G. Wentworth:

J.G. Wentworth Originations, LLC
P.O. Box 83364
Woburn, MA 01813-3364

IT IS FURTHER ORDERED that Metropolitan Life and Metropolitan Insurance shall absolutely, irrevocably, and forever discharge and satisfy their legal and contractual obligation to make the Term Payments (including the Cortez Assigned Payments and the Remaining Cortez Monthly Payments) by paying and remitting said Term Payments to J.G. Wentworth pursuant to this court order and the Servicing Arrangement and by doing so Metropolitan Life

**FINAL ORDER APPROVING TRANSFER OF PARTIAL STRUCTURED SETTLEMENT PAYMENT RIGHTS** -- Page 4 of 6

THE STATE OF TEXAS
COUNTY OF BRAZORIA
I certify that the above and foregoing is a full, true and correct photographic copy of the original record on file in my office. Given under my hand and seal of the court in my lawful custody and possession, JOYCE HUDMAN, BRAZORIA COUNTY CLERK
BY _____ DEPUTY

**APPENDIX OF APPELLEE PEACHTREE SETTLEMENT FUNDING, LLC -- PAGE 66**

·and Metropolitan Insurance are forever released from, and shall have not have, any current or future liability or obligation to Mr. Cortez for the Term Payments. By signing and approving this order, Mr. Cortez acknowledges, understands, and agrees that he will receive the Remaining Cortez Monthly Payments through J.G. Wentworth (as his designated payment agent solely for purposes of receiving and distributing the Term Payments pursuant to the Servicing Arrangement and this Final Order) and that Metropolitan Life and Metropolitan Insurance shall not be obligated to make any portion of the Term Payments directly to Mr. Cortez; that Mr. Cortez shall look solely and exclusively to J.G. Wentworth for the Remaining Cortez Monthly Payments; and that Metropolitan Life and Metropolitan Insurance shall not, following the signing of this Final Order by the Court, have any obligation or liability (contractual or legal) to Mr. Cortez relative to the Term Payments, including the Remaining Cortez Monthly Payments.

IT IS FURTHER ORDERED that the Remaining Cortez Monthly Payments shall remain the property of Mr. Cortez, even though said payments are to be paid and remitted to J.G. Wentworth pursuant to the Servicing Arrangement and this Final Order.

IT IS FURTHER ORDERED that Metropolitan Life and Metropolitan Insurance are not being forced or required or ordered to split or divide any structured settlement/annuity payments amongst Mr. Cortez and J.G. Wentworth and shall not be required to do so in the future.

IT IS FURTHER ORDERED that Metropolitan Life and Metropolitan Insurance shall irrevocably change the beneficiary for the Cortez Assigned Payments to the Transferee, and no other individual or entity other than the Transferee shall have the authority to change the beneficiary for the Cortez Assigned Payments.

IT IS FURTHER ORDERED that pursuant to the Texas Transfer Statute, by making and delivering the Term Payments to J.G. Wentworth as set forth in the preceding paragraphs,

THE STATE OF TEXAS
COUNTY OF BRAZORIA
I certify that the above and foregoing is a full, true and correct photographic copy of the original record on file in my office. Given under my hand and seal of the court in my lawful custody and possession, JOYCE HUDMAN, BRAZORIA COUNTY CLERK
BY _____ DEPUTY

**FINAL ORDER APPROVING TRANSFER OF PARTIAL STRUCTURED SETTLEMENT PAYMENT RIGHTS -- Page 5 of**

MetLife shall, as to all parties except J.G. Wentworth, be discharged and released from any and all liability for the Term Payments.

All costs of Court are taxed against MetLife. This Order is a final judgment and is intended to and does fully and finally dispose of all claims and relief requested in this proceeding. All other relief not expressly granted in this order is DENIED.

SIGNED this 24 day of July, 2015.

_____
JUDGE PRESIDING

Agreed to and Approved
As to Form and Substance:

_____
Michael Cortez

NESBITT, VASSAR & MCCOWN, LLP
15851 Dallas Parkway, Suite 800
Addison, TX 75001
PH. (972) 371-2411
Telecopier - (972) 371-2410

By: _____
Earl S. Nesbitt
State Bar No. 14916900
David S. Vassar
State Bar No. 20503175

ATTORNEYS FOR J.G. WENTWORTH
ORIGINATIONS, LLC



THE STATE OF TEXAS
COUNTY OF BRAZORIA
I certify that the above and foregoing is a full, true and correct photographic copy of the original record on file in my office. Given under my hand and seal of the court in my lawful custody and possession, JOYCE HUDMAN, BRAZORIA COUNTY CLERK
BY_____ DEPUTY

# TAB 13

CAUSE NO. 15-03-54382-CV

| | | |
|---|---|---|
| IN RE: | § | IN THE DISTRICT COURT |
| | § | |
| ESPERANZA HUGHES | § | JIM WELLS COUNTY, TEXAS |
| | § | |
| | § | 79TH JUDICIAL DISTRICT |

**FINAL ORDER APPROVING TRANSFER OF**
**PARTIAL STRUCTURED SETTLEMENT PAYMENT RIGHTS**

On the 8th day of June 2015, this case came on for final hearing and trial and consideration by the Court of the Application for Approval of Structured Annuity Benefits (the "Application") filed by Peachtree Settlement Funding, LLC, as the transferee ("Peachtree" or "Transferee"), and Esperanza Hughes as the payee ("Payee" or "Ms. Hughes.") pursuant to Chapter 141 of the Texas Civil Practice & Remedies Code (the "Texas Transfer Statute"). The Court, after due consideration of the Application, the Objection and Response to the proposed transfer filed by Metropolitan Tower Resources Group, Inc. and Metropolitan Life Insurance Company (the "MetLife Opposition"), and the other pleadings and documents on file with the Court and the evidence and testimony presented at the hearing, hereby makes the following findings:

1.     This Court has subject matter jurisdiction over this proceeding and personal jurisdiction over the parties. Venue of this matter is proper in Jim Wells County, Texas and this Court because Ms. Hughes resides in Jim Wells County, Texas. All persons/entities entitled to be served and/or provided notice of these proceedings have been served and/or provided such notice or have appeared in this proceeding directly and/or through counsel.

2.     Ms. Hughes is currently entitled to receive structured settlement payments from Metropolitan Tower Resources Group, Inc. ("Metropolitan Tower"). Metropolitan Tower funded its obligation to make those structured settlement payments to Ms. Hughes through the

**FINAL ORDER APPROVING TRANSFER OF PARTIAL**
**STRUCTURED SETTLEMENT PAYMENT RIGHTS -- Page 1 of 7**

**APPENDIX OF APPELLEE PEACHTREE SETTLEMENT FUNDING, LLC -- PAGE 70**

issuance of an annuity (Group Annuity contract # 8298/Certificate # 84882) by Metropolitan Life Insurance Company ("Metropolitan Life").

3.    Ms. Hughes is married and has one minor child and therefore has two dependents, as that term is defined in the Texas Transfer Statute.

4.    Ms. Hughes agreed in a Purchase Contract dated on or about March 21, 2015 (the "Transfer Agreement," a copy of which was filed with the Court as an exhibit to the Application) to transfer and assign to Peachtree 237 partial monthly payments in the amount of One Thousand Five Hundred and No/100 Dollars ($1,500.00) commencing August 1, 2015 and continuing through and including April 1, 2035. (These monthly payments which are being transferred and assigned by Ms. Hughes from August of 2015 through April of 2035 shall hereafter be referred to as the "Hughes Assigned Payments." The total monthly structured settlement/annuity payments coming due and owing from August of 2015 through April of 2035 [the "Term"], shall be referred to as the "Term Payments." The portion of each monthly Term Payment coming due and owing from August of 2015 through April of 2035 that are not being transferred and assigned by Ms. Hughes and which shall be retained by Ms. Hughes after this proceeding concludes, shall hereafter be referred to as the "Retained Hughes Payments").

5.    The proposed transfer of the Hughes Assigned Payments by Ms. Hughes to Peachtree, as reflected in the Transfer Agreement and described in the Application, satisfies and complies with all statutory requirements of Chapter 141 of the Texas Civil Practice and Remedies Code (the "Texas Transfer Statute"), and does not contravene any applicable statute or an order of any court or other governmental authority. The transfer also satisfies the Internal Revenue Code Section 5891 and does not contravene any Federal or State statute or the order of any court or responsible administrative authority.

6.     The transfer is in the best interest of Ms. Hughes, taking into account the welfare and support of her dependents.

7.     Ms. Hughes has been advised in writing by Peachtree to seek independent professional advice regarding the transfer, and has either received the advice or knowingly waived the opportunity to seek and receive said advice in writing.

8.     Disclosures to the Payee were made, and notices of the hearing and the filing of the Application were provided to all interested parties, including Metropolitan Life and Metropolitan Tower (collectively, sometimes referred to herein as "MetLife") in accordance with the Texas Transfer Statute. Payee has been advised that her death prior to the due date of the last Hughes Assigned Payment shall not affect the transfer of the Hughes Assigned Payments from Payee to Peachtree and Payee understands she is giving up her rights, and the rights of her heirs, successors and/or beneficiaries, to the Hughes Assigned Payments, and Payee has requested that this transfer be approved.

9.     The Court has considered the objection/opposition filed by Metropolitan Tower and Metropolitan Life and herby overrules and denies said objection/opposition. Metropolitan Tower and Metropolitan Life's request for an award of attorneys fees is hereby denied.

10.    The Court further finds that Metropolitan Tower and Metropolitan Life are not being and will not be required or directed to divide any structured settlement/annuity payments amongst Ms. Hughes and Peachtree or any other party.

11.    This Order is a "Qualified Order" pursuant to 26 U.S.C. sec. 5891, *et seq.*

12.    Ms. Hughes and Peachtree agreed that the purchase price to be paid relative to the transaction between Peachtree and Ms. Hughes would be One Hundred Fifty-Eight Thousand Five Hundred Sixteen and 92/100 Dollars ($158,516.92).

Based on the foregoing findings and the evidence submitted to the Court and being satisfied that the proposed transfer satisfies all applicable statutory requirements, IT IS ORDERED, ADJUDGED, AND DECREED that the Application is GRANTED and the transfer and assignment of Ms. Hughes right, title, and interest in and to the Hughes Assigned Payments to Peachtree is APPROVED.

IT IS FURTHER ORDERED that the MetLife Opposition is hereby denied and overruled and the request for attorneys fees by Metropolitan Tower and Metropolitan Life is denied.

IT IS FURTHER ORDERED that in furtherance of the Court's order granting the Application and approving the proposed transfer described herein, Metropolitan Life Insurance Company and Metropolitan Tower Resources Group, Inc., are hereby authorized and directed to pay and remit to Peachtree (as Ms. Hughes's designated and authorized payment agent for purposes of receiving the Term Payments) 100% of the Term Payments (the monthly structured settlement/annuity payments that come due and owing by Metropolitan Life and/or Metropolitan Tower from August of 2015 through April of 2035), when and as said payments come due. Upon receipt of each monthly Term Payment, Peachtree is entitled to retain the portion of each Term Payment that constitutes a Hughes Assigned Payment ($ 1,500.00 out of the total monthly payment of $ 6,500.00 per month), and is ordered to pay and remit to Ms. Hughes the portion of said Term Payments that constitute the Remaining Hughes Payments. (This arrangement shall be referred to as the "Servicing Arrangement.")

IT IS FURTHER ORDERED that the Term Payments shall be sent directly to Peachtree by Metropolitan Life pursuant to this order and the Servicing Arrangement described herein, at the following address or to such other address designated by Peachtree:

Peachtree Settlement Funding, LLC
P.O. Box 83364
Woburn, MA 01813-3364

IT IS FURTHER ORDERED that Metropolitan Life and Metropolitan Tower shall absolutely, irrevocably, and forever discharge and satisfy their legal and contractual obligation to make the Term Payments (including the Hughes Assigned Payments and the Remaining Hughes Payments) by paying and remitting said Term Payments to Peachtree pursuant to this court order and the Servicing Arrangement and by doing so, Metropolitan Life and Metropolitan Tower are forever released from, and shall have not have, any current or future liability or obligation to Ms. Hughes for the Term Payments. By signing and approving this order, Ms. Hughes acknowledges, understands, and agrees that she will receive the Remaining Hughes Payments through Peachtree (as her designated payment agent solely for purposes of receiving and distributing the Term Payments pursuant to the Servicing Arrangement and this Final Order) and that Metropolitan Life and Metropolitan Tower shall not be obligated to make any portion of the Term Payments directly to Ms. Hughes; that Ms. Hughes shall look solely and exclusively to Peachtree for the Remaining Hughes Payments; and that Metropolitan Life and Metropolitan Tower shall not, following the signing of this Final Order by the Court, have any further payment obligation or liability (contractual or legal) to Ms. Hughes relative to the Term Payments, including the Remaining Hughes Payments.

IT IS FURTHER ORDERED that the Remaining Hughes Payments shall remain the property of Ms. Hughes, even though said payments are to be paid and remitted to Peachtree pursuant to the Servicing Arrangement and this Final Order.

IT IS FURTHER ORDERED that Metropolitan Life and Metropolitan Tower are not being forced or required or ordered to split or divide any structured settlement/annuity payments amongst Ms. Hughes and Peachtree and shall not be required to do so in the future.

FINAL ORDER APPROVING TRANSFER OF PARTIAL
STRUCTURED SETTLEMENT PAYMENT RIGHTS -- Page 5 of 7

IT IS FURTHER ORDERED that Metropolitan Life and Metropolitan Tower shall irrevocably change the beneficiary for the Hughes Assigned Payments to the Transferee, and no other individual or entity other than the Transferee shall have the authority to change the beneficiary for the Hughes Assigned Payments.

IT IS FURTHER ORDERED that pursuant to the Texas Transfer Statute, by making and delivering the Term Payments to Peachtree as set forth in the preceding paragraphs, MetLife shall, as to all parties except Peachtree, be discharged and released from any and all liability for the Term Payments.

rt ~~All costs of Court are taxed against MetLife.~~ This Order is a final judgment and is intended to and does fully and finally dispose of all claims and relief requested in this proceeding. All other relief not expressly granted in this order is DENIED.

SIGNED this 1st day of ~~June,~~ July 2015.

_____
JUDGE PRESIDING

Agreed to and Approved
As to Form and Substance:


_Esperanza Hughes_, *pro se*

NESBITT, VASSAR & MCCOWN, LLP
15851 Dallas Parkway, Suite 800
Addison, TX 75001
PH. (972) 371-2411
Telecopier - (972) 371-2410


By: _____
      Earl S. Nesbitt
      State Bar No. 14916900
      David S. Vassar
      State Bar No. 20503175

ATTORNEYS FOR PEACHTREE
SETTLEMENT FUNDING, LLC


APPROVED AS TO FORM ONLY:


By: _____
      David Walsh, Esq.
      State Bar Card No. 00786327
      dwalsh@waslhlawcc.com
      711 N. Carancahua St., Suite 510
      Corpus Christi, TX 78401
      Tel. (316) 882-2088
      Fax. (316) 288-8010

      *Attorneys for Metropolitan Life Insurance*
      *Company and Metropolitan Tower*
      *Life Insurance Company*

      Of Counsel

      Andrew J. Lorin (Admitted Pro Hac Vice)
      Drinker Biddle & Reath LLP
      One Logan Square, Suite 2000
      Philadelphia, P A 19103
      Telephone 215-988-2806
      Facsimile 215-988-2757

FINAL ORDER APPROVING TRANSFER OF PARTIAL
STRUCTURED SETTLEMENT PAYMENT RIGHTS -- Page 7 of 7

Agreed to and Approved
As to Form and Substance:

NESBITT, VASSAR & MCCOWN, LLP
15851 Dallas Parkway, Suite 800
Addison, TX 75001
PH. (972) 371-2411
Telecopier - (972) 371-2410

_____
Esperanza Hughes, *pro se*

By: _____
    Earl S. Nesbitt
    State Bar No. 14916900
    David S. Vassar
    State Bar No. 20503175

ATTORNEYS FOR PEACHTREE
SETTLEMENT FUNDING, LLC

APPROVED AS TO FORM ONLY:

By: _____
    David Walsh, Esq.
    State Bar Card No. 00786327
    dwalsh@waslhlawcc.com
    711 N. Carancahua St., Suite 510
    Corpus Christi, TX 78401
    Tel. (316) 882-2088
    Fax. (316) 288-8010

    *Attorneys for Metropolitan Life Insurance*
    *Company and Metropolitan Tower*
    *Life Insurance Company*

    <u>Of Counsel</u>

    Andrew J. Lorin (Admitted Pro Hac Vice)
    Drinker Biddle & Reath LLP
    One Logan Square, Suite 2000
    Philadelphia, P A 19103
    Telephone 215-988-2806
    Facsimile 215-988-2757

<u>**FINAL ORDER APPROVING TRANSFER OF PARTIAL**</u>
<u>**STRUCTURED SETTLEMENT PAYMENT RIGHTS**</u> -- **Page 7 of 7**

# TAB 14

000566

CAUSE NO. CV-0073918

IN RE:

BRADLEY TURPIN

§ IN THE COUNTY COURT
§
§ AT LAW NO. 2
§
§ GALVESTON COUNTY, TEXAS

## FINAL ORDER APPROVING TRANSFER OF
## STRUCTURED SETTLEMENT PAYMENT RIGHTS

On the 13th day of May, 2015, this case came on for final hearing and trial and consideration by the Court of the Application for Approval of Sale of Partial Payment Rights (the "Application") filed by Structured Asset Funding, LLC d/b/a 123 LumpSum, as the transferee ("SAF" or "Transferee"), and Bradley Turpin as the payee ("Payee" or "Mr. Turpin") pursuant to Chapter 141 of the Texas Civil Practice & Remedies Code (the "Texas Transfer Statute"). The Court, after due consideration of the Application, the Objection and Response to the proposed transfer filed by Metropolitan Tower Life Insurance Company and Metropolitan Life Insurance Company (the "MetLife Opposition"), and the other pleadings and documents on file with the Court and the evidence and testimony presented at the hearing, hereby makes the following findings:

1.      This Court has subject matter jurisdiction over this proceeding and personal jurisdiction over the parties. Venue of this matter is proper in Galveston County, Texas and this Court because Mr. Turpin resides in Galveston County, Texas. All persons/entities entitled to be served and/or provided notice of these proceedings have been served and/or provided such notice or have appeared in this proceeding directly and/or through counsel.

2.      Mr. Turpin is currently entitled to receive structured settlement payments from Metropolitan Tower Life Insurance Company ("MetLife Tower"). MetLife Tower funded its obligation to make those structured settlement payments to Mr. Turpin through the issuance of

FILED

15 JUN 10 AM 10: 33

COUNTY CLERK
GALVESTON COUNTY, TEXAS

FINAL ORDER APPROVING TRANSFER OF
STRUCTURED SETTLEMENT PAYMENT RIGHTS--Page 1 of 8

**APPENDIX OF APPELLEE PEACHTREE SETTLEMENT FUNDING, LLC -- PAGE 79**

000567

an annuity (Group Annuity contract no. 8298, certificate no. 82886) by Metropolitan Life Insurance Company ("Metropolitan Life").

3.    Mr. Turpin is married and has two minor children and therefore has three (3) dependents, as that term is defined in the Texas Transfer Statute.

4.    Mr. Turpin agreed in a Purchase and Assignment Agreement Contract dated on or about March 10, 2015 (the "Transfer Agreement," a copy of which was filed with the Court as an exhibit to the Application) to transfer and assign to SAF 174 partial monthly payments in the amount of One Thousand Eight Hundred Fifty and No/100 Dollars ($1,850.00) each commencing April 15, 2015 and continuing through and including September 15, 2029. (These monthly payments which were to be transferred and assigned by Mr. Turpin from April of 2015 through September of 2029 shall hereafter be referred to as the "Turpin Assigned Payments."[1]

5.    The total monthly structured settlement/annuity payments coming due and owing from and after the date of this Final Order through September of 2029 [the "Term"], which have not been previously transferred and assigned to third parties pursuant to a court-approved transfer/assignment of such payments (the "Previously Assigned Payments")[2], shall be referred

---

[1] A portion of the April, May and June 2015 monthly structured settlement/annuity payments that have not been previously transferred and assigned were initially contemplated by Turpin and SAF to be included in the transaction that is the subject of this Final Order. However, those payments have already come due and owing and been paid and received by MetLife to Turpin (or will be within the next few days after this order is being submitted to the court) and will therefore not be included in the Turpin Assigned Payments. MetLife has fully complied with its obligation relative to the April, May, and June 2015 payments remitted to Mr. Turpin prior to the date of this Final Order. The Turpin Assigned Payments will therefore begin with the July 2015 payment for purposes of this Final Order.

[2] Mr. Turpin completed a prior transaction involving a portion of his monthly structured settlement payments due and owing by MetLife during the Term with Bentzen Financial, LLC and its designated assignee, SuttonPark Structured Settlements, LLC, in 2012, which transaction was approved in a Final Order Approving Transfer of Structured Settlement Payment Rights (the "2012 Order") by the Galveston County Court at Law No. 3, in Cause No. CV-68114. In that 2012 transaction and 2012 Order, Mr. Turpin transferred and assigned to Bentzen/SuttonPark partial monthly payments in the amount of $ 2,500 from November 2012 through September 2029. Mr. Turpin also completed a prior transaction involving a portion of his monthly structured settlement payments due and owing during the Term with Structured Asset Funding, LLC and its designated assignee, Madison Avery Settlement Fund, LLC in 2013, which transaction was approved in a Final Order Approving Assignment of Structured Settlement Payments (the "2013 Order") by the Galveston County Court at Law No. 1, in

**FINAL ORDER APPROVING TRANSFER OF**
**STRUCTURED SETTLEMENT PAYMENT RIGHTS--Page 2 of 8**

000568

to as the "Term Payments."[3] A portion of each monthly Term Payment coming due and owing from and after the date of this Final Order through September of 2029 that are not being transferred and assigned by Mr. Turpin (the "Turpin Assigned Payments"), and which have not been previously transferred and assigned by Mr. Turpin, under the Prior Court Orders (the Previously Assigned Payments) and which shall be retained by Mr. Turpin, shall hereafter be referred to as the "Remaining Turpin Monthly Payments".

6. SAF has assigned all of its right, title, and interest in and to the Transfer Agreement and the Turpin Assigned Payments to an affiliate, Andrew Jonathan Settlement Fund, LLC ("Andrew Jonathan"). The proposed transfer of the Turpin Assigned Payments by Mr. Turpin to SAF and, ultimately, to Andrew Jonathan, as reflected in the Transfer Agreement and described in the Application, satisfies and complies with all statutory requirements of Chapter 141 of the Texas Civil Practice and Remedies Code (the "Texas Transfer Statute"), and does not contravene any applicable statute or an order of any court or other governmental authority. The transfer also satisfies the Internal Revenue Code Section 5891 and does not contravene any Federal or State statute or the order of any court or responsible administrative authority.

---

Cause No. CV-69309. In that 2013 transaction and 2013 Order, Mr. Turpin transferred and assigned to SAF/Madison Avery partial monthly payments in the amount of $ 1,000 each from May 2013 through April of 2028. The payments previously transferred and assigned by Mr. Turpin in the 2012 Order and 2013 Order shall hereafter be referred to as the Previously Assigned Payments. The Court finds that MetLife is making the Previously Assigned Payments directly to SuttonPark and Madison Avery pursuant to the 2012 Order and 2013 Order and will continue to do so after this order is signed.

[3] As a result of the 2012 Final Order and the 2013 Final Order (the "Prior Court Orders"), and in light of this Final Order, Mr. Turpin is currently receiving $ 730.00 per month from the structured settlement/annuity payments due and owing by MetLife and will continue to receive that amount through April of 2028, when the transaction approved in the 2013 Final Order concludes, at which time, Mr. Turpin will be receiving $8,307 per month until September of 2029, when the transaction approved in the 2012 Final Order is concluded. The monthly payments due and owing by MetLife between the date of this Final Order and September of 2029 (the Term), which have not, prior to the date of this Final Order, been transferred and assigned to any third party and were being paid and remitted monthly to Mr. Turpin by MetLife, shall be referred to in this Final Order as the "Term Payments." The Term Payments, which include the payments to be transferred and assigned pursuant to this Final Order, are the payments which will be the subject of the Servicing Arrangement as hereafter described.

**FINAL ORDER APPROVING TRANSFER OF**
**STRUCTURED SETTLEMENT PAYMENT RIGHTS**--Page 3 of 8

000569

7.     The transfer of the Turpin Assigned Payments to SAF, and ultimately, to Andrew Jonathan, is in the best interest of Payee, taking into account the welfare and support of Payee's dependents, if any.

8.     Payee has been advised in writing by Andrew Jonathan to seek independent professional advice regarding the transfer, and has either received the advice or knowingly waived the opportunity to seek and receive said advice in writing.

9.     Disclosures to the Payee were made, and notices of the hearing and the filing of the Application were provided to all interested parties, including Metropolitan Life and MetLife Tower (collectively, sometimes referred to herein as "MetLife") in accordance with the Texas Transfer Statute.  Payee has been advised that his death prior to the due date of the last Turpin Assigned Payment shall not affect the transfer of the Turpin Assigned Payments from Payee to SAF and Payee understands he is giving up his rights, and the rights of his heirs, successors and/or beneficiaries, to the Turpin Assigned Payment, and Payee has requested that this transfer be approved.

10.     The Court has considered the objection/opposition filed by MetLife Tower and Metropolitan Life and herby overrules and denies said objection/opposition.

11.     The Court further finds that MetLife Tower and Metropolitan Life are not being and will not be required or directed to divide any structured settlement/annuity payments amongst Mr. Turpin and Andrew Jonathan or any other party.

12.     This Final Order constitutes a "Qualified Order" under 26 U.S.C. § 5891, *et seq.*

13.     The Court finds that SAF and Mr. Turpin have agreed to an increase in the purchase price to be paid to Mr. Turpin in connection with the proposed transfer to One Hundred Ninety Thousand and 00/100 Dollars ($190,000.00).

---

FINAL ORDER APPROVING TRANSFER OF
STRUCTURED SETTLEMENT PAYMENT RIGHTS--Page 4 of 8

000570

Based on the foregoing findings and the evidence submitted to the Court and being satisfied that the proposed transfer satisfies all applicable statutory requirements, IT IS ORDERED, ADJUDGED, AND DECREED that the Application is GRANTED and the transfer and assignment of all of Payee's right, title, and interest in and to the Turpin Assigned Payments by the Payee to SAF, and ultimately to Andrew Jonathan, is APPROVED.

IT IS FURTHER ORDERED that the MetLife Opposition is hereby denied and overruled.

IT IS FURTHER ORDERED that in furtherance of the Court's order granting the Application and approving the proposed transfer described herein, Metropolitan Life Insurance Company and MetLife Tower and Annuity Company, are hereby authorized and directed to pay and remit to Andrew Jonathan, and as Mr. Turpin's designated and authorized payment agent for purposes of receiving the Term Payments, 100% of the Term Payments (the monthly structured settlement/annuity payments that come due and owing by Metropolitan Life and/or MetLife Tower from June of 2015 through September of 2029 which have not been previously transferred and assigned to a third party in a prior, court-approved transfer [the Previously Assigned Payments], when and as said Term Payments come due. (Specifically, MetLife will continue to pay and remit the Previously Assigned Payments to the designated transferees and assignees as reflected in the Prior Court Orders and will send only the Term Payments to Andrew Jonathan). Upon receipt of each monthly Term Payment, Andrew Jonathan shall retain the portion of each Term Payment that constitutes a Turpin Assigned Payment ($1,850 out of the total monthly Term Payment of $7,307 per month through April of 2028 and out of the total monthly Term Payment of $ 8,307 per month from May of 2028 through September of 2029), and is ordered to pay and remit to Mr. Turpin the portion of said Term Payments that constitute the Remaining Turpin Monthly Payments ($ 5,457.00 per month from June of 2015 through April of 2028 and

FINAL ORDER APPROVING TRANSFER OF
STRUCTURED SETTLEMENT PAYMENT RIGHTS--Page 5 of 8

000571

$6,457.00 per month from May of 2028 through September of 2029). This arrangement shall be referred to as the "Servicing Arrangement."

IT IS FURTHER ORDERED that the Term Payments shall be sent directly to Andrew Jonathan by Metropolitan Life pursuant to this order and the Servicing Arrangement described herein, at the following address or to such other address designated by Andrew Jonathan:

Andrew Jonathan Settlement Fund, LLC
P.O. Box 200699
Pittsburgh, PA 15251-0699

IT IS FURTHER ORDERED that Metropolitan Life and MetLife Tower shall absolutely, irrevocably, and forever discharge and satisfy their legal and contractual obligation to make the Term Payments (including the Turpin Assigned Payments and the Remaining Turpin Monthly Payments) by paying and remitting said Term Payments to Andrew Jonathan, pursuant to this court order and the Servicing Arrangement and by doing so, Metropolitan Life and MetLife Tower are forever released from, and shall have not have, any current or future liability or obligation to Mr. Turpin for the Term Payments. By signing and approving this order, Mr. Turpin acknowledges, understands, and agrees that he will receive the Remaining Turpin Monthly Payments through Andrew Jonathan (as the servicer under this Final Order and as his designated payment agent solely for purposes of receiving and distributing the Term Payments to Mr. Turpin pursuant to the Servicing Arrangement and this Final Order) and that Metropolitan Life and MetLife Tower shall not be obligated to make any portion of the Term Payments directly to Mr. Turpin; that Mr. Turpin shall look solely and exclusively to Andrew Jonathan for the Remaining Turpin Monthly Payments; and that Metropolitan Life and MetLife Tower shall not, following the signing of this Final Order by the Court, have any obligation or liability (contractual or legal) to Mr. Turpin relative to the Term Payments, including the Remaining Turpin Monthly Payments.

FINAL ORDER APPROVING TRANSFER OF
STRUCTURED SETTLEMENT PAYMENT RIGHTS--Page 6 of 8

000572

IT IS FURTHER ORDERED that the Remaining Turpin Monthly Payments shall remain the property of Mr. Turpin, even though said payments are to be paid and remitted to Andrew Jonathan pursuant to the Servicing Arrangement and this Final Order.

IT IS FURTHER ORDERED that Metropolitan Life and MetLife Tower are not being forced or required or ordered to split or divide any structured settlement/annuity payments amongst Mr. Turpin and Andrew Jonathan and shall not be required to do so in the future.

IT IS FURTHER ORDERED that Metropolitan Life and MetLife Tower shall irrevocably change the beneficiary for the Turpin Assigned Payments to Andrew Jonathan, and no other individual or entity other than the Transferee shall have the authority to change the beneficiary for the Turpin Assigned Payments.

IT IS FURTHER ORDERED that pursuant to the Texas Transfer Statute, by making and delivering the Term Payments to Andrew Jonathan as set forth in the preceding paragraphs, MetLife shall, as to all parties except Andrew Jonathan, be discharged and released from any and all liability for the Term Payments. *It is further Ordered that SAF shall pay One Thousand Five Hundred Dollars ($1,500) to Pat Robertson Financial Consultant for providing Indep Financial Services in this matter*

All costs of Court are taxed against MetLife. This Final Order is a final judgment and is intended to and does fully and finally dispose of all claims and relief requested in this proceeding. All other relief not expressly granted in this order is DENIED.

SIGNED this __7__ day of June, 2015.

_Barbara E. Roberts_
JUDGE PRESIDING

FILED

15 JUN 10 AM 10: 33

_Dwight D. Sullivan_
COUNTY CLERK
GALVESTON COUNTY, TEXAS

000573

Agreed to and Approved
As to Form and Substance:

_Bradley Turpin_ _(signature)_
Bradley Turpin

NESBITT, VASSAR & MCCOWN, LLP
15851 Dallas Parkway, Suite 800
Addison, TX 75001
PH. (972) 371-2411
Telecopier - (972) 371-2410

By: _(signature)_
Earl S. Nesbitt
State Bar No. 14916900
David S. Vassar
State Bar No. 20503175
J. Brian Dear
State Bar No. 24032117

ATTORNEYS FOR STRUCTURED ASSET
FUNDING, LLC d/b/a 123 LUMPSUM AND
ANDREW JONATHAN SETTLEMENT FUND,
LLC

FILED

15 JUN 10 AM 10: 32

_(signature)_
COUNTY CLERK